CASE NO. 24-1061

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

ORTHO-TAIN, INC., a Puerto Rico corporation
*Defendant – Appellant,*

v.

VIVOS THERAPEUTICS, INC., A Delaware Corporation
*Plaintiff – Appellee.*

---

On Appeal from the United States District Court
For the District of Colorado

The Honorable Judge William J. Martinez
Civil Action No. 20-cv-01634-WJM-JPO

---

## PLAINTIFF-APPELLEE VIVOS THERAPEUTICS, INC.'S
## SUPPLEMENTAL BRIEF REGARDING COLLATERAL JURISDICTION

---

SNELL & WILMER L.L.P.

Kevin Walton
Brenna Fisher
675 15th Street, Suite 2500
Denver, CO 80202
Phone: 303-634-2000
Email: kwalton@swlaw.com
bfisher@swlaw.com

*Attorneys for Plaintiff-Appellee*
*Vivos Therapeutics, Inc.*

# TABLE OF CONTENTS

1.  Factual Background ........................................................................1

2.  Will v. Hallock Further Clarified this Court's Preexisting Collateral Order Appeal Requirements that a Dispute Between Private Parties Over the Litigation Privilege Must Involve a "Substantial Public Interest." .................................................................................2

    (a)  Existing Precedent .............................................................3

    (b)  Will v. Hallock ...................................................................5

    (c)  Will's Effect on this Appeal ..............................................7

3.  Colorado's Litigation Privilege Is Merely a Defense to Liability................10

4.  Conclusion ..................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abney v. United States*,
431 U.S. 651 (1977)..........................................................................................4, 8

*Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*,
703 F.3d 1147 (10th Cir. 2013)................................................................9

*Begley v. Ireson*,
399 P.3d 777 (Colo. App. 2017)....................................................................10, 11

*Belinda A. Begley & Robert K. Hirsch Irrevocable Trust v. Ireson*,
490 P.3d 963 (Colo. Ct. App. 2020).....................................................................10

*Borden v. Malone*,
327 So.3d 1105 (Ala. 2020).................................................................................12

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)........................................................................................4, 8

*Coomer v. Donald J. Trump for President, Inc.*,
552 P.3d 562 (Colo. Ct. App. 2024).....................................................................11

*Coomer v. Make Your Life Epic LLC*,
98 F.4th 1320 (10th Cir. 2024) .....................................................................8, 9, 11

*Coulson v. Steiner*,
390 P.3d 1139 (Alaska 2017) ..............................................................................12

*Franklin D. Azar & Assocs. P.C. v. Ngo*,
No. 23CA0191, 23CA0659, 2024 WL 4143690 (Colo. Ct. App. Sept. 5, 2024) ...............................................................................................11

*Goodman v. Goodman*,
226 N.E.3d 704 (Ill. App. 2023).........................................................................12

*Helstoski v. Meanor*,
442 U.S. 500 (1979)............................................................................................4

*IBP, Inc. v. Klumpe,*
    101 S.W.3d 461 (Tex. App. 2001) ........................................................13

*JTG Ventures, LLC v. Prosperity Bank,*
    No. 2019 WL 1387701 (N.D. Okla. Mar. 27, 2019) ...........................12

*Kell v. Benzon,*
    925 F.3d 448 (10th Cir. 2019) ......................................................3, 6, 7

*Mandel v. Hafermann,*
    503 F.Supp.3d 946 (N.D. Cal. 2020) ..................................................12

*Menocal v. GEO Grp., Inc.,*
    No. 22-1409, 2024 WL 4544184 (10th Cir. 2024) ..............................9

*Merrick v. Burns, Wall, Smith & Mueller, P.C.,*
    43 P.3d 712 (Colo. Ct. App. 2001) ...............................................11, 12

*Mohamed v. Jones,*
    100 F.4th 1214 (10th Cir. 2024) .......................................................3, 7

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982)...................................................................4, 6, 8

*R.H. Ciccone Properties, Inc. v. JP Morgan Chase Bank,*
    141 So.3d 590 (Fla. App. 2014) ........................................................12

*Rieck v. Jensen,*
    651 F.3d 1188 (10th Cir. 2011) ..........................................................3

*Robinson v. Volkswagenwerk AG,*
    940 F.2d 1369 (10th Cir. 1999) ..................................................*passim*

*Starbuck v. McCleary,*
    992 N.W.2d 245 (Iowa App. 2023) ....................................................13

*Tucker v. Faith Bible Chapel Int'l,*
    36 F.4th 1021 (10th Cir. 2022)............................................................8

*Will v. Hallock,*
    546 U.S. 345 (2006).................................................................*passim*

**Statutes**

28 U.S.C. § 1291 ...............................................................................2, 10

Federal Tort Claims Act ("FTCA") .......................................................5, 7

Pursuant to the Court's October 31, 2024 Order for Supplemental Briefing, Vivos Therapeutics, Inc. ("Vivos") submits this supplemental brief regarding the effect of *Will v. Hallock*, 546 U.S. 345 (2006) on this Court's collateral jurisdiction. This brief also provides Vivos's position that Colorado's litigation privilege is a defense to liability, not an absolute immunity from suit.

1. **Factual Background**[1]

This Appeal concerns an issue already considered by this Court, and twice considered by the District Court. Vivos and Ortho-Tain are direct competitors in the dental-supply market. In 2020 and 2021, Ortho-Tain made false and misleading statements, through its CEO and attorney, to a mutual business affiliate about Vivos's products and methods. Based on these statements, Vivos filed suit against Ortho-Tain in the District of Colorado. Ortho-Tain moved to dismiss Vivos's First Amended Complaint, claiming that it enjoyed an "absolute privilege" to defame Vivos because those statements were made in anticipation of litigation. The District Court rejected this argument and denied Ortho-Tain's motion to dismiss, which Ortho-Tain immediately appealed to this Court.

On appeal, this Court determined it had limited interlocutory appellate jurisdiction based on *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir.

_____

[1] This briefing contains only minimal facts, given its supplemental nature. For a full review of the factual basis for this appeal, see Vivos's Response Brief. *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, No. 24-1061, filed May 29, 2024.

1999). This Court remanded only the issue of litigation privilege back to the District Court, requesting that the District Court use the proper legal standard when analyzing the application of litigation privilege.

On remand from this Court, the District Court again considered whether Ortho-Tain had properly presented the issue of litigation privilege. The District Court "decline[d] to delve into the factfinding endeavor of whether the Spring 2020 communications were made in good faith contemplation of litigation," saving that inquiry for a later day in the case. *Id.* at 7 (R-19). Rather than moving forward with litigation and fact-finding on the litigation privilege issue, Ortho-Tain again appealed the District Court's ruling to this Court. As fully set forth in its Motion to Dismiss, Vivos maintains that this Court lacks jurisdiction over this Appeal. *Vivos Therapeutics, Inc. v. Ortho-Tain, Inc.*, No. 24-1061, Motion to Dismiss for Lack of Jurisdiction (March 5, 2024).

2. ***Will v. Hallock* Further Clarified this Court's Preexisting Collateral Order Appeal Requirements that a Dispute Between Private Parties Over the Litigation Privilege Must Involve a "Substantial Public Interest."**

At issue here is whether Ortho-Tain's appeal falls under this Court's collateral jurisdiction. Typically, federal appellate courts have jurisdiction only to review "final decisions." 28 U.S.C. § 1291. But under this doctrine, the typically narrow category of final, appealable orders is expanded "to include decisions that are conclusive on question decided, resolve important questions separate from merits,

and are effectively unreviewable if not addressed through interlocutory appeal."
*Rieck v. Jensen*, 651 F.3d 1188, 1190 (10th Cir. 2011). Importantly, orders that fall under the scope of this doctrine are rare, limited only to those that involve "constitutionally based immunities" or "orders that would be moot following final judgment." *Mohamed v. Jones*, 100 F.4th 1214, 1219 (10th Cir. 2024) (citations omitted).

The Tenth Circuit has recognized that appellants must meet a "stringent" three-element test to take advantage of collateral jurisdiction. *Kell v. Benzon*, 925 F.3d 448, 452 (10th Cir. 2019). The collateral-order doctrine will apply only where the district court's decision: (1) "conclusively decided the disputed question;" (2) "resolved an important issue separate from the merits;" and (3) "could not be effectively reviewed on direct appeal." *Id.* (citing *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988)).

### (a) Existing Precedent

In its prior order, this Court found jurisdiction to review the District Court's denial of Ortho-Tain's motion to dismiss, based on litigation privilege, under *Robinson*, 940 F.2d at 1370. There, the appellant appealed from the district court's "interlocutory" order "denying a motion to dismiss and a motion for summary judgment," involving a decision of absolute immunity based on litigation privilege. *Id.* The appellant, a lawyer being sued for malpractice, maintained that he was

"absolutely immune from civil liability for damages" based on the litigation privilege, though the District Court had rejected that theory. *Id.* This Court ultimately agreed, ruling that there was no absolute immunity for private lawyers involved in a private dispute. *Id.* at 1373. Absolute immunity did not extend to "a malpractice action by [a] former client" under Oklahoma law. *Id.*

This Court found jurisdiction "based on the collateral order doctrine as applied to a denial of absolute immunity." *Id.* (collecting cases). This finding did not involve a lengthy analysis, but rather was supported by a hefty cite to a string of Supreme Court precedent. *Id.* But the Supreme Court cases cited by *Robinson* did not directly rule on whether a court maintains appellate jurisdiction over denial of a non-final order based on litigation privilege. *Nixon v. Fitzgerald*, 457 U.S. 731, 742–43 (1982) (deciding whether the president of the United States is entitled to absolute immunity, under the collateral-order doctrine); *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979) (reviewing a claim of double jeopardy under the collateral-order doctrine); *Abney v. United States*, 431 U.S. 651, 657 (1977) (reviewing denial of a motion to dismiss on double jeopardy grounds); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47 (1949) (reviewing the district court's refusal to apply state law, because it was "final disposition of a claimed right" and if reviewed after a final judgment, it would "be too late effectively to review the present order and the rights conferred by statute . . . will have been lost"). Thus, these Supreme Court cases did not provide

binding guidance for a case involving private parties who invoke the litigation privilege. The Supreme Court had only given persuasive precedent from which this Court could base the *Robinson* decision on.

### (b) *Will v. Hallock*

Over a decade after the *Robinson* decision, the Supreme Court published *Will v. Hallock*, 546 U.S. 345 (2006). In *Will*, the Court acknowledged the collateral-order doctrine's effect, allowing appellate jurisdiction over "a narrow class of decisions" but ultimately found that the collateral-order doctrine did not apply to a district court's refusal to apply the judgment bar of the Federal Tort Claims Act ("FTCA"). *Id.* at 347. There, a woman and her company brought suit against the United States under the FTCA, alleging that a U.S. Customs agent negligently searched and seized business computer equipment upon suspicion of child pornography. *Id.* at 347–48. However, no criminal charges were brought, and the computer equipment was either damaged or lost, forcing the woman to close her business. *Id.* at 348. The district court dismissed the claims under the FCTA, explaining that her claims fell under an exception to the FCTA's waiver of sovereign immunity. *Id.* The woman then brought a separate *Bivens* action, alleging deprivation of property, but the government again moved to dismiss, this time invoking the judgment bar of the FCTA. *Id.*

The Court immediately turned to a discussion of the collateral-order doctrine, noting that there are three requirements to satisfy the collateral-order doctrine: (1) the order must have "conclusively determine[d] the disputed question;" (2) the order must have "resolve[d] an important issue completely separate from the merits of the action;" and (3) the order must "be effectively unreviewable on appeal from a final judgment." *Id.* at 349 (citations omitted); *Kell*, 925 F.3d at 452. The Court noted that the "conditions are 'stringent'" and emphasized "its modest scope," while also restating that "orders rejecting absolute immunity and qualified immunity" are immediately appealable under the doctrine. *Will*, 546 U.S. at 350 (citations omitted).

The Court explained that "compelling public ends" are necessary when implementing absolute immunity. *Id.* at 352 (quotations omitted). As *Nixon* explained, "absolute immunity merely precludes a particular private remedy for alleged misconduct in order to advance compelling public ends." *Nixon*, 457 U.S. at 758. And the *Will* decision went on to explain that in each of the cases involving the collateral-order doctrine, "some particular value of a high order was marshalled in support of the interest in avoiding trial . . . [t]hat is, it not mere avoidance of a trial but *avoidance of a trial that would imperil a substantial public interest*, that counts when asking whether an order is 'effectively' unreviewable if review is to be left until later." *Will*, 546 U.S. at 352–53 (emphasis added). Cases that would "imperil a substantial public interest" include those that considered separation of powers,

preservation of the efficiency of government and the initiative of its officials, respect for a State's dignitary interests, and mitigating the government's advantage over the individual. *Id.* Ultimately, the Court found no such substantial public interest affected merely because the case implicated the judgment bar of the FTCA. *Id.* at 353–54.

### (c) *Will*'s Effect on this Appeal

While *Will* did not abrogate the Tenth Circuit's *Robinson* decision, it clarified the three-element test used to determine whether an appellate court has collateral jurisdiction.[2] *Will* made clear that, in order to satisfy the third-element—that the decision be "effectively unreviewable on appeal from final judgment"—the party claiming absolute immunity must assert "a substantial public interest" that will be threatened if the Court declines collateral jurisdiction. *Will*, 546 U.S. at 349 (citations omitted); *Kell*, 925 F.3d at 452; *Mohamed*, 100 F.4th at 1218–19. This indicates that collateral jurisdiction, already a stringent test with very limited exceptions, must not be used to evaluate any general dispute between parties that contemplates immunity. Rather, it must be reserved for situations that implicate compelling public ends. *Will*, 546 U.S. at 352; *Nixon*, 457 U.S. at 758; *see also Coomer v. Make Your Life Epic LLC*, 98 F.4th 1320, 1324 (10th Cir. 2024) ("For

---

[2] The undersigned is unaware of any precedent nationwide that has been fully abrogated in light of the *Will* decision.

'fact-related disputes,' the Supreme Court advises us that the cost of disrupting the ordinary course of litigation will likely overpower any public-interest concerns.").

Ortho-Tain has claimed only that the substantial public interest implicated here is "the public interest of encouraging settlement in lieu of litigation." Appellant's Br. at 31. As support, Ortho-Tain cites one unpublished case from the Northern District of Illinois. *Id.* (citing *Simon v. Oltmann*, No. 98 C 1759, 2001 WL 1035719 (N.D. Ill. 2001)). This case did not involve a discussion of absolute immunity and it cannot sustain the weight that Ortho-Tain has thrust upon it.

Ortho-Tain has not—and cannot—assert that a compelling public interest is implicated here, so much so that this Court should utilize the narrow collateral-order doctrine to review this Appeal. *See Coomer*, 98 F.4th at 1325 (noting that "in every case" where the Court has exercised collateral jurisdiction, the appeal has involved "some particular value of a high order"). This is simply a case involving one competitor's defamatory statements of another competitor. This case does not rise to the level as those which the Court has found collateral jurisdiction. *See Nixon*, (absolute presidential immunity); *Abney*, 431 U.S. at 657 (double jeopardy for criminal prosecution); *Cohen*, 337 U.S. at 546–47 (state-law defense that would no longer be available after trial); *cf. Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1025–26 (10th Cir. 2022) (denying collateral order jurisdiction for review of a ministerial defense in Title VII litigation); *cf. Coomer*, 98 F.4th at 1324–25 (denying

collateral jurisdiction to decide applicability of Colorado state law); *cf. Menocal v. GEO Grp., Inc.*, No. 22-1409, 2024 WL 4544184, at *4 (10th Cir. 2024) (unpublished) (declining to review district court order denying sovereign immunity to a government contractor on interlocutory appeal for lack of collateral jurisdiction).

And even given that Ortho-Tain's proffered public interest has not been explicitly considered by the Court, "[t]he Supreme Court has repeatedly cautioned against expansion of the collateral order doctrine." *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 703 F.3d 1147, 1153 (10th Cir. 2013). A private party's right to interlocutory appeal does not warrant expansion of the collateral-order doctrine, especially given the Supreme Court's guidance in *Will*, 546 U.S. 345, and this Court's recent opinion in *Coomer*, 98 F.4th 1320.

The Supreme Court noted that "some particular value of a high order" must be apparent to create collateral jurisdiction. *Will*, 546 U.S. at 352; *Coomer*, 98 F.4th at 1325. As a result, not every case of denial of absolute immunity is immediately appealable and to the extent *Robinson* stands for that, more is required under *Will*. The Court in *Will* highlighted what is a substantial public interest: "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's

advantage over the individual." *Id.* at 352–53. None of these circumstances are present here.[3]

### 3.     Colorado's Litigation Privilege Is Merely a Defense to Liability.

Litigation privilege does not afford litigants an absolute immunity from suit, as Ortho-Tain suggests. Litigation privilege is a defense to liability that must be evaluated with the merits of the individual claims. This is particularly true in this context, where the statements were made prior to the initiation of any judicial proceeding. *See Begley v. Ireson,* 399 P.3d 777, 780–81 (Colo. App. 2017). Ortho-Tain has incorrectly asserted that its defense of litigation privilege entitles it to absolute immunity from suit.

A recent decision out of the Colorado Court of Appeals supports this conclusion. In *Belinda A. Begley & Robert K. Hirsch Irrevocable Trust v. Ireson*, the Court reiterated the well-established principle that "[s]tatements made by an attorney during or in preparation for pending legal proceedings are absolutely privileged so long as the remarks have some relation to the proceeding." 490 P.3d 963, 968 (Colo. Ct. App. 2020). After extensive discussion, the Court found that the defendant had asserted a viable litigation-privilege defense at the summary-

---

[3] Indeed, Ortho-Tain will be subject to trial even if it ultimately is found to be immune from liability for defaming Vivos given the other claims pending against Ortho-Tain that are not subject to any claim of immunity. Thus, applying the collateral order doctrine under these circumstances would eviscerate the final order requirement. *See* 28 U.S.C. § 1291.

judgment stage. *Id.* Although the Court referred to the litigation privilege as an "absolute privilege," the Court decided this issue at the summary-judgment stage, as it would with any other affirmative defense. *See id.* Despite the language used by the Court, the procedural posture of the case indicates that Colorado treats litigation privilege as an affirmative defense. *See also Franklin D. Azar & Assocs. P.C. v. Ngo*, No. 23CA0191, 23CA0659, 2024 WL 4143690, at *3 (Colo. Ct. App. Sept. 5, 2024) (evaluating litigation privilege on an appeal from summary judgment). Litigation privilege is appropriate to evaluate after fact-finding has concluded.

Admittedly, Colorado courts have been loose in the language used to discuss the litigation privilege as a defense or as immunity. *See Coomer v. Donald J. Trump for President, Inc.*, 552 P.3d 562, 597-98 (Colo. Ct. App. 2024) (referring to the "litigation privilege" as providing "absolute immunity" to its speaker); *Merrick v. Burns, Wall, Smith & Mueller, P.C.*, 43 P.3d 712, 714 (Colo. Ct. App. 2001) (evaluating litigation privilege for judicial officers as a question of "absolute immunity"). However, even given this ill-defined use of the term "absolute immunity," these cases do not upend the logical conclusion that litigation privilege is merely a defense.

For example, in *Coomer*, the Colorado Court of Appeals discussed whether statements made at a press conference regarding campaign litigation were protected by the litigation privilege. 552 P.3d at 598. But there, the Court was not focused on

the distinction between litigation privilege as a defense versus as absolute immunity. Rather, the Court focused on an analysis of the merits of the litigation privilege.

Similarly, in *Merrick*, the Colorado Court of Appeals discussed the merits of a litigation privilege defense for an attorney facing malpractice claims based on in-court conduct. 43 P.3d at 713–14. The Court determined that the attorney was entitled to "absolute immunity," which extended "only to those functions intimately related and essential to the judicial decision-making process." *Id.* at 714 (citation omitted). The Court did not discuss the distinction between litigation privilege as a defense or immunity. *See id.*

Furthermore, ruling that litigation privilege is a defense to liability under Colorado law follows the holdings of several other jurisdictions. *JTG Ventures, LLC v. Prosperity Bank*, No. 2019 WL 1387701, at *2 (N.D. Okla. Mar. 27, 2019) ("Litigation privilege is [an] affirmative defense."); *Coulson v. Steiner*, 390 P.3d 1139, 1143 n.18 (Alaska 2017) ("[L]itigation privilege is an affirmative defense."); *Mandel v. Hafermann*, 503 F.Supp.3d 946, 963 (N.D. Cal. 2020) ("The litigation privilege is an affirmative defense."); *Goodman v. Goodman*, 226 N.E.3d 704, 711 (Ill. App. 2023) ("The absolute litigation privilege is an affirmative defense."); *R.H. Ciccone Properties, Inc. v. JP Morgan Chase Bank*, 141 So.3d 590, 591 (Fla. App. 2014) ("The litigation privilege is an affirmative defense which affords absolute immunity."); *Borden v. Malone*, 327 So.3d 1105, 1112 (Ala. 2020) ("Alabama

courts treat the litigation privilege as an affirmative defense." (citation omitted));
*Starbuck v. McCleary*, 992 N.W.2d 245, at *3 (Iowa App. 2023) (table) ("[T]he
litigation privilege is an affirmative defense."); *IBP, Inc. v. Klumpe*, 101 S.W.3d
461, 471 (Tex. App. 2001) ("Privilege . . . is an affirmative defense to be proved.").

Given the Colorado courts' consistent evaluation of litigation privilege at the
summary-judgment stage and other courts' precedent that it should be considered an
affirmative defense, Vivos respectfully requests that this Court find that the litigation
privilege is a defense to liability, especially in the context of pre-litigation
statements.

### 4.    <u>Conclusion</u>

Based on the foregoing, Vivos respectfully requests that this Court decline to
exercise collateral jurisdiction over this Appeal involving a purely private dispute
between competitors and dismiss the same.

Dated: November 21, 2024.

SNELL & WILMER L.L.P.

*/s/ Brenna Fisher*

Kevin Walton
Brenna Fisher
675 15th Street, Suite 2500
Denver, CO 80202
Phone: 303-634-2000
Email: kwalton@swlaw.com
bfisher@swlaw.com

***Attorneys for Plaintiff-Appellee
Vivos Therapeutics, Inc.***

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(c), I certify that this brief is proportionally spaced and contains 2,981 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), in 14-point Times New Roman font. I relied on my word processor to obtain the count and it is MSWord365. I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

SNELL & WILMER L.L.P.

*/s/ Brenna Fisher*
Kevin Walton
Brenna Fisher
675 15th Street, Suite 2500
Denver, CO  80202
Phone:  303-634-2000
Email: kwalton@swlaw.com
      bfisher@swlaw.com

***Attorneys for Plaintiff-Appellee
Vivos Therapeutics, Inc.***

# CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1.  All required privacy redactions have been made per 10th Cir. R. 25.5;

2.  If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3.  The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Carbon Black, and according to the program, are free of viruses.

SNELL & WILMER L.L.P.

*/s/ Brenna Fisher*
Kevin Walton
Brenna Fisher
675 15th Street, Suite 2500
Denver, CO 80202
Phone: 303-634-2000
Email: kwalton@swlaw.com
      bfisher@swlaw.com

***Attorneys for Plaintiff-Appellee***
***Vivos Therapeutics, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2024, a true and correct copy of the foregoing **PLAINTIFF-APPELLEE VIVOS THERAPEUTICS, INC.'S SUPPLEMENTAL BRIEF REGARDING COLLATERAL JURISDICTION** was transmitted to all counsel of record using the CM/ECF system.

*/s/ Maleigha Welsh*