**No. 24-1061**
**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| VIVOS THERAPEUTICS, INC., a corporation, | ) | |
| Plaintiff/Appellee | ) | Appeal from 20-cv-1634 |
| vs. | ) | USDC, Dist. of Colorado |
| ORTHO-TAIN, INC., a corporation, | ) | Hon. William J. Martinez |
| Defendant/Appellant | ) | |

**SUPPLEMENTAL BRIEF OF APPELLANT**

Oral argument is not requested.

Nathan I. Neff
Neff Law Group, P.C.
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

# Table of Contents

1.      Whether *Will v. Hallock*, 546 U.S. 345 (2006), abrogated this court's analysis
        of collateral-order jurisdiction in *Robinson v. Volkswagenwerk AG*,
        940 F.2d 1369 (10th Cir. 1991); and, if so, whether a dispute between private
        parties over the litigation privilege involves a 'substantial public interest,"
        *Will*, 546 U.S. at 353…..…………………………………..…………....................4.

        Protecting the Absolute Litigation Privilege Serves a Substantial Public Interest.14

2.      Whether Colorado's litigation privilege is an immunity from suit
        or a defense to liability…….…………………………………………………. 15

**Table of Authorities** **Page**

*Will v. Hallock*, 546 U.S. 345 (2006)    4-7
*Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991)    4
Webster's Third New Int'l Dictionary 6 (1981)    4
Black's Law Dictionary 8 (10th ed. 2014)    4
*Miller v. United States*, 71 F.4th 1247, 1253 (10th Cir. 2023)    4
Restatement (Second) of Torts §586 and 587 (1977)    4, 8, 17
*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)    4
*Helstoski v. Meanor*, 442 U.S. 500 (1979)    4
*Abney v. United States*, 431 U.S. 651 (1977)    4
*Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949)    4, 9
28 U.S.C.A §2676 ("Judgment as Bar")    5
28 U.S.C. §1291    6-
*Walters v. Linhof*, 559 F.Supp.1231 (D.Colo. 1983).    8, 16
*BancPass, Inc. v. Highway Toll Administration, LLC*, 863 F.3d 391 (5th Cir. 2017) 8-10
*Shanks v. AlliedSignal, Inc.*, 169 F.3d 988 (5th Cir. 1999)    10, 19
*Black v. Dixie Consumer Products*, LLC, 835 F.3d 579 (6th Cir. 2016)    11
C.R.S.A. §13-20-1101 (2019)    12
*Salazar v. Public Trust Institute*, 522 P.3d 242 (Colo. App. 2022)    13
*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2017)    13
*Anderson v. Senthilnathan*, 540 P.3d 1248 (Colo. App. 2023)    13
Restatement (Second) of Torts, §590A    13
*MacLarty v. Whiteford*, 30 Colo.App.378 (1972)    14
*Hoffler v. State Personnel Bd.*, 7 P.3d 989 (Colo.App. 2000)    14
*Patterson v. James*, 454 P.3d 345 (Colo. App. 2018)    14
*Cardtoons v. MLBPA*, 335 F.3d 1161 (10th Cir. 2003)    14-20
*Johnston v. H.G. Cartwright*, 355 F.2d 32 (8th Cir. 1966)    15
*Koch v. Pechota*, 744 Fed.App. 105 (3rd Cir. 2018)    15
*Hoar v. Wood*, 44 Mass. 193 (1841)    16
*BKP, Inc. v. Killmer, Lane & Newman, LLP*, 506 P.3d 84 (Colo. App. 2021)    17
*Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595 (Colo. App. 1985)    17
*Merrick v. Burns*, 43 P.3d 712 (Colo.App.2001)    18
*Mithcell v. Forsyth*, 472 U.S. 511 (1985)    19
*Horwitz v. State Board of Examiners*, 822 F.2d 1508 (10th Cir. 1987)    19
*CEDA Corp. v. City of Houston*, 817 S.W.2d 846 (Tex.App 1991)    20

1. **Whether *Will v. Hallock*, 546 U.S. 345 (2006), abrogated this court's analysis of collateral-order jurisdiction in *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991); and, if so, whether a dispute between private parties over the litigation privilege involves a 'substantial public interest," *Will*, 546 U.S. at 353**.

The Supreme Court's decision in *Will v. Hallock*, 546 U.S. 345 (2006) did not abrogate this Court's analysis of collateral order jurisdiction as expressed in *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991).

"Webster defines "abrogate" as "to abolish by authoritative, official, or formal action," "to put an end to," or "do away with." Webster's Third New Int'l Dictionary 6 (1981); *see also* Black's Law Dictionary 8 (10th ed. 2014)." *Miller v. United States*, 71 F.4th 1247, 1253 (10th Cir. 2023).

In *Robinson*, this Court correctly observed that "[a]ll lawyers are protected by an absolute privilege against defamation actions based upon litigation conduct in judicial proceedings. *Robinson,* 940 F.2d 1372 and citing to Restatement (Second) of Torts §586 at 247-48 (1977). The defendant-law firm in *Robinson*, H&R, had asserted an absolute immunity defense in a motion to dismiss filed in the district court, which had been denied. On appeal, this Court concluded that "we have jurisdiction based on the collateral order doctrine as applied to a denial of absolute immunity." *Id*. at 1370.

This Court's analysis of collateral-order jurisdiction in *Robinson* cited to and relied upon four decisions of the Supreme Court, each permitting interlocutory appeal: *Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (absolute immunity), *Helstoski v. Meanor*, 442 U.S. 500 (1979), *Abney v. United States*, 431 U.S. 651 (1977), and *Cohen v. Beneficial Loan Corp*., 337 U.S. 541 (1949).

The decision in *Cohen* notably arose from a private corporation's interlocutory appeal. *Cohen* was a shareholder's derivative civil action in which federal jurisdiction rested on the diverse citizenship of the parties. Prior to trial, a question arose over whether a state statute requiring the plaintiff shareholder to post security for the costs of litigation applied in the federal court. After the District Court denied its motion to require such security, the corporate defendant sought immediate appellate review of the ruling in the Court of Appeals. That court reversed and ordered that security be posted. Thereafter, the Supreme Court granted *certiorari* and then held that the Court of Appeals had jurisdiction under §1291 to entertain the interlocutory appeal from the District Court's pretrial order. See, *Cohen*, 337 U.S. at 546-47.

In 2006, the Supreme Court unanimously decided *Will v. Hallock*, 546 U.S. 345 (2006), a case which closely scrutinized the limitations of the collateral order doctrine. In *Will*, a corporation and its owner filed two separate actions against certain US Customs-government agents and the USA, alleging that the agents had intentionally damaged property (computer equipment) that had been seized during the course of the investigation. The first lawsuit was brought under the Federal Tort Claims Act and alleged negligence by the customs agents in executing their investigation-search. And in the second lawsuit, a *Bivens* action, the plaintiff alleged that the damage to its computer-property constituted a violation of the Fifth Amendment's Due Process Clause.

After the district court dismissed the first suit, on the ground that the Customs-agents' activities fell within an exception to the Tort Claims Act's waiver of sovereign immunity, the defendant-Customs agents in the second (Bivens) action moved for

summary judgment. *Id*. at 348. The Customs agents asserted that the district court's prior dismissal of the plaintiff's Federal Tort Claims case operated to bar the plaintiffs from maintaining its second/Bivens action upon application of a federal "Judgment as bar" statute, 28 U.S.C.A §2676: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." *Id.*

The district court, however, disagreed and so denied the Customs Service agents' motion. The District Court held that the dismissal of the Tort Claims Act suit against the Government in the first-filed litigation case had been solely on procedural grounds and so had 'failed to raise the Act's judgment bar." *Id*. at 345. The district court's decision was affirmed on appeal by the Second Circuit. The Supreme Court granted *certiorari* to consider the judgment bar but upon review vacated the Appellate Court's Order for want of appellate jurisdiction. In so ruling, the Supreme Court in *Will* held that a district court's refusal to apply the Federal Tort Claims Act's judgment bar is not open to collateral appeal under 28 U.S.C. §1291.

The decision in *Will* in no way abrogated any of the four Supreme Court decisions cited and relied upon by this Court in *Robinson, supra,* for its conclusion that interlocutory appeal may be taken under 28 U.S.C. §1291 from an order denying absolute immunity. If anything, the decision in *Will* reinforces the central thrust of the *Robinson*-Court's collateral-order doctrine analysis: "Prior cases mark the line between rulings within the

class and those outside. On the immediately appealable side are orders rejecting absolute immunity." *Will*, 546 U.S. at 350.

*Will* does not stand for the proposition that there is a sub-species of "orders rejecting absolute immunity" that are no longer immediately appealable. Rather, *Will* stands for the proposition that orders rejecting absolute immunity are immediately appealable because there is a substantial public interest that would be imperiled if appeal were not permitted.

The *Will* decision defined the driving force of its collateral order jurisprudence as follows: "In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual. *That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later.*" *Id*. at 352-53. (emphasis supplied).

The Supreme Court in *Will* distinguished the statutory 'Judgment Bar' from the immunity available at common law, finding the Judgment Bar to be a procedural element that could only be raised if (1) a lawsuit was filed against the government under the Tort Claims Act and if (2) that lawsuit had already been resolved in favor of the Government. *Id.* at 354. Immunity was not at issue. "The closer analogy to the judgment bar, then, is *not immunity* but the defense of claim preclusion, or *res judicata*. Although the statutory judgment bar is arguably broader than traditional *res judicata*, it functions in much the

same way, with both rules depending on a prior judgment as a condition precedent, and neither reflecting a policy that a defendant should be scot free of any liability." *Id*. at 354.

The *Will* Court's conclusion that the "Judgment Bar' statute was unlike an immunity and so *not* within the narrow class of cases entitled to pursue interlocutory appeal under §1291 should not threaten parties, witnesses or counsel entitled to absolute immunity. As discussed in the cases synthesized below, conduct that is within the application of the absolute litigation privilege is to be protected and encouraged, not undermined and discouraged, because such conduct serves several important societal interests, both public and private.

For example, in *Walters v. Linhof*, 559 F.Supp. 1231 (D.Colo. 1983) the District Court applied the litigation privilege to hold certain pre-suit letters from counsel to be absolutely immune from civil liability. The court stated: "The defense of absolute privilege permits a defendant to escape liability for conduct that would otherwise be actionable *because the defendant acted in furtherance of some interest of social importance which is entitled to protection* even at the expense of uncompensated harm to the plaintiff's reputation. That interest may be one of the defendant himself, of a third person, or of the general public." *Id.* at 1237. (emphasis supplied).

Eleven years after the Supreme Court's decision in *Will*, *supra*, the United States Court of Appeals for the Fifth Circuit allowed a §1291 interlocutory appeal in the case of *BancPass, Inc. v. Highway Toll Administration, LLC*, 863 F.3d 391 (5th Cir. 2017). In *BancPass* a rival company brought an action in diversity against a company that specialized in highway toll collection technology, alleging defamation and seeking a declaratory

judgment that its cellular telephone application did not tortiously interfere with the defendant's contractual rights. *Id*. at 394-95. The defendant filed a counterclaim, seeking a declaratory judgment that its rival had tortiously interfered with its current and prospective contracts. Defendant also filed a motion for summary judgment asserting that it was absolutely immune from defamation liability upon the application of the Texas judicial proceedings privilege. *Id*. at 401.

The district court in *BancPass* denied the defendant's motion for summary judgment and an interlocutory appeal was taken pursuant to §1291. The plaintiff filed a motion to dismiss the appeal, asserting that the appellate court was without jurisdiction to hear the appeal. *Id*. at 394.

In taking up the motion to dismiss the appeal the Fifth Circuit applied the familiar standard that "under the collateral order doctrine, the Supreme Court has read the language of §1291 to permit interlocutory appeals 'from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final' *Swint*, 514 U.S. at 42, 115 S.Ct. 1203 (quoting *Cohen v. Beneficial Indust. Loan Corp*., 337 U.S. 541, 546, 69 S.Ct.1221, 93 L.Ed. 1528 (1949)). 'That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *BancPass*, 863 F.3d at 397.

*BancPass* explained that the appellate court's exercise of jurisdiction over interlocutory appeals of an order denying absolute immunity was proper "…because an immunity from suit is not only a means of prevailing on the merits, but an entitlement not

to stand trial or face the other burdens of litigation." *Id*. and citing *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 991 (5th Cir. 1999).

The *BancPass* decision noted that in precedent, *Shanks*, it had previously found that the "litigation privilege provided true immunity under Texas law and, thus, orders denying that immunity were appealable." *BancPass*, 863 F.3d at 398. Consequently, the motion to dismiss the appeal for lack of appellate jurisdiction was denied. *Id*. at 401.

The *BancPass* decision then turned to the merits of the defendant's asserted privilege and found that the factual circumstances of the defendant's communications did not support the application of the absolute litigation privilege as provided by Texas adoption of §586 and §587 of the Restatement (Second) of Torts. The Appellate Court in *BancPass* observed that defendants communications had been sent to third parties, such as Google and Apple, with "little interest in a possible tortious interference or defamation dispute between HTA and BancPass" and which made no reference to potential litigation between HTA and BancPass. *Id*. at 405.

The *BancPass* opinion was issued in the year 2017, more than a decade after the Supreme Court's decision in *Will*. An intent to abrogate existing law or doctrine must be clear and explicit. The Supreme Court in *Will* had not been called upon to address the appealability of a denial of absolute immunity, let alone an absolute immunity doctrine

with a 400-year common law history dating back to England and formal adoption by 48 of the 50 United States of America.[1]

The Supreme Court's original 'collateral-order' exception doctrine, birthed by the decision in *Cohen* in 1949, arose from a dispute between private parties. So too did the decision in *BancPass*. *Will* does not stand for the proposition that only important public officials and government lawyers are vested with a special species of 'absolute immunity' that enjoys preferential treatment, for §1291 collateral order doctrine purposes, than the absolute immunity afforded to parties, witness and counsel in the private sector.

This much was made clear by a sister Circuit of the United States Court of Appeals in the case of *Black v. Dixie Consumer Products*, LLC, 835 F.3d 579 (6th Cir. 2016). In *Black*, a commercial carrier employee who was injured while unloading products at a factory brought a personal injury suit against the factory owner and its parent company. Defendants filed a motion for summary judgment, asserting that they were immune by operation of a workers compensation statute providing an exclusive remedy under the alleged facts. The district court denied the defendants motion and an interlocutory appeal under §1291 was filed. *Id.* at 581-82.

In taking up the appeal the Sixth Circuit in *Black* squarely addressed the issue of whether the right to an interlocutory appeal under §1291 was somehow dependent on whether the party asserting the immunity was a public official or a private actor and then

---

[1] *See*, T.Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp.L.Rev. Iss. 4 (2004): "All but two states recognize absolute immunity for lawyers involved in litigation with 'very little variation' from state to state."

held that the distinction does not require disparate treatment. In so finding, the appellate court in *Black* stated: "True, Dixie and Georgia-Pacific are private companies. True also, the collateral-order exception typically involves claims of immunity from suit by government officials, as Black points out. Appellee's Br.3. But that does not make public-official claims of immunity the only ones available under the exception. We have frequently allowed such appeals by private parties for the same reason we permit interlocutory appeals by government actors: They are entitled to immunity from suit, whether under state or federal law." *Id*. at 583-84.

The Sixth Circuit in *Black* also observed that other federal courts of appeal, including from the 1st, 2nd, 5th, 9th and 11th Circuits, had each exercised jurisdiction over an appeal by private companies or individuals claiming an immunity arising from a state-based, anti-SLAPP statute. *Id.* at 584.[2] It is true that numerous states have passed anti-SLAPP legislation, including Colorado, in the form of C.R.S.A §13-20-1101 (2019). This statute permits a defendant to file a 'special motion' to promptly secure dismissal of a lawsuit on the basis that the allegedly wrongful conduct is not actionable where it is predicated upon the defendant's exercise of a constitutionally protected right to petition or free speech. This statutory immunity is enforceable by immediate appeal in the event that the 'special motion' asserting it is denied by the trial court. *Id.* at §1101(7).

As discussed by the Appellate Court of Colorado in the case of *Salazar v. Public Trust Institute*, 522 P.3d 242, 246 (Colo. App. 2022) the purpose of the Colorado anti-

---

[2]See also *Moldowan v. City of Warren*, 578 F.3d 351, 372-73 (6th Cir. 2017) (permitting interlocutory appeal of order denying private witnesses assertion of absolute immunity).

SLAPP statute is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.".

The statute is an indication of Colorado public policy. It seeks to advance the strong public interest of affording a form of immunity to persons who have become sued simply for exercising their constitutional rights in a permissible manner. The functional immunity afforded by the statute is bolstered by the express right to pursue immediate appeal of an order denying a special motion to dismiss. In this sense, Colorado's legislative-public policy shares a parallel interest with the common law doctrine of absolute immunity, at least in the area of defamation liability.

This was implicitly recognized by the Appellate Court of Colorado in the case of *Anderson v. Senthilnathan*, 540 P.3d 1248 (Colo. App. 2023). In *Anderson*, the defendants had been sued for defamation and the trial court had granted a special motion to dismiss. An appeal was taken and the appellate court reversed the trial court's order - as to the special motion. However, the appellate court affirmed the entry of dismissal as to one defendant on the basis that the allegedly unlawful conduct, her testimony before a legislative committee, was absolutely immune by operation of Colorado's adoption of the Restatement (Second) of Torts, §590A. See, *Id.* at 1260 ("legislative testimony bore sufficient relation to the subject of the legislative proceeding to be entitled to absolute privilege.")

**Protecting the Absolute Litigation Privilege Serves a Substantial Public Interest**

The jurisprudence, both in Colorado and elsewhere, informs that the absolute litigation privilege serves a substantial public interest, on several fronts. In *MacLarty v. Whiteford*, 30 Colo.App.378, 379-80 (1972) the Colorado Court of Appeals described the public interest and policy rationale for applying the absolute litigation privilege as vital and necessary to the very integrity of our judicial system: "The reason underlying this doctrine is that public interest in the freedom of expression by participants in judicial proceedings, uninhibited by risk from resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy where he has been wronged thereby." Citing 50 Am.Jur.2d Lebel and Slander §231.[3]

Similarly, in *Cardtoons v. MLBPA*, 335 F.3d 1161, 1167 (10th Cir. 2003) this Court recognized that the absolute immunity afforded by the litigation privilege serves an important public policy favoring efforts to avoid litigation: "Requiring potential plaintiffs to bypass the post office on the way to the courtroom would undermine our longstanding policy favoring efforts to avoid litigation."

And it stands to reason that the denial of a substantial claim of absolute immunity, including its possessor's entitlement not to have to answer for his conduct in a civil

---

[3]See also, *Hoffler v. State Personnel Bd.*, 7 P.3d 989, 991 (Colo.App. 2000) ("The privilege was created to protect participants in these proceedings from liability for defamatory communications. The policy underlying the privilege is that for the judicial process to function effectively, those who participate in it must be able to do so without being hampered by the fear of private suits for defamation."); and *Patterson v. James*, 454 P.3d 345, 350 (Colo. App. 2018) ("The litigation privilege exists to encourage and protect free access to the courts for litigants and their attorneys.")

damages action, operates to defeat the ends of justice. *See, Johnston v. H.G. Cartwright*, 355 F.2d 32, 36 (8th Cir. 1966) (affirming dismissal, applying §586 of the Restatement of Torts to attorney's pre-suit letters sent to third parties, holding them to be absolutely privileged and identifying the substantial public interest: 'to hold an attorney or witness liable for statements made in a preliminary conference would discourage him from conferring about proposed testimony relative to an action then pending or contemplated, *and thus tend to defeat the ends of justice*.") (emphasis supplied).

In this same vein the Appellate Court in *Koch v. Pechota*, 744 Fed.App. 105 (3rd Cir. 2018) affirmed dismissal of the plaintiff's defamation claims upon application of the absolute litigation privilege. *Id*. at 114. The Court noted that the litigation privilege in both New York and New Jersey is 'absolute' and applies regardless of the speaker's motive. *Id.*

The Appellate Court in *Koch* found counsel's letters to have been 'pertinent to' the subject matter of litigation between the plaintiff and the counsel's client and stating "Even if [defendant attorney] Pechota's alleged statements mischaracterized or inaccurately described the videos, the videos are relevant to the litigation. All that is needed for the protection of the privilege is a general frame of reference and a relationship to the subject matter of the action. [citation omitted] *Furthermore, the policy behind the litigation privilege, to encourage parties to speak unencumbered by the fear of civil litigation, applies here*." *Id*. at 114. (emphasis supplied)

Fostering freedom of speech to allow parties and their counsel to pursue vindication of legal rights, whether before or after a lawsuit is filed, has long been declared a matter of substantial public interest. *See, e.g*., *Hoar v. Wood*, 44 Mass. 193 (1841). In *Hoar*, Chief

Justice Shaw discussed the policy rationale for applying the absolute immunity doctrine to allegedly defamatory statements made in relation to a judicial proceeding, stating: "it is, on the whole, *for the public interest, and best calculated to subserve the purpose of justice*, to allow counsel full freedom of speech in conducting the causes and advocating and sustaining the rights, of their constituents; and this freedom of discussion ought not be impaired by numerous and refined distinctions." *Id.* at p.197-198. (emphasis supplied).

In this case, Vivos implores this Court to impair the absolute immunity doctrine with a refined distinction proposing that there is no substantial public interest at issue if the denial of absolute immunity was against a private party or its counsel instead of an important public official or government/public lawyer. This Court should decline.

At present, the law in Colorado holds that "It is a *preliminary* question of law for the court to determine whether the circumstances give rise to a privilege." *Walters v. Linhof*, 559 F.Supp. 1231 (D.Colo. 1983). That determination of this issue of law will no longer be a 'preliminary' matter if a private party otherwise entitled to absolute immunity from suit cannot enforce its immunity interests, including the right not to have to answer, by interlocutory appeal under §1291.

The important public interest expressed by this Court in *Cardtoons* (335 F.3d 1161) – encouraging parties to use the mailbox and explore settlement prior to filing suit in court – will be severely undermined if the application of the litigation privilege no longer permits private parties and their counsel the means to enforce, by interlocutory appeal, the absolute immunity afforded at common law.

It is well recognized that "Lawsuits filed against litigation lawyers by their clients' adversaries primarily seek vengeance."[4] In the context of the litigation privilege, the absolute immunity doctrine exists to promptly afford a party the right to secure dismissal of unactionable claims irrespective of whether they are brought against a public official or a private party. Society in general benefits by the vigorous enforcement of the absolute litigation privilege. Without it, private parties and counsel will, instead, bypass the post-office and proceed directly with a filed lawsuit before reaching out to witnesses or the target of the litigation to explore resolution by settlement.

The Supreme Court's decision in *Will* did not abrogate this Court's collateral-order analysis. Orders denying absolute immunity remain appealable under §1291 because of the important public, private and societal interests advanced by the grant of absolute immunity.

2.  **Whether Colorado's litigation privilege is an immunity from suit or a defense to liability**.

The litigation privilege is absolute and so provides a complete immunity from suit, not a mere defense to liability. Colorado has adopted the Restatement (Second) of Torts, both as to attorneys, §586; *see BKP, Inc. v. Killmer, Lane & Newman, LLP*, 506 P.3d 84, 90 (Colo. App. 2021), and parties, §587; *see Dep't of Admin. v. State Pers. Bd.*, 703 P.2d 595, 597-98 (Colo. App. 1985). Colorado law, then, holds that an attorney and private parties are absolutely privileged to publish defamatory matter about another in communications preliminary to a proposed judicial proceeding, or in the institution of, or

---

[4]*See*, T.Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp.L.Rev. Iss. 4 (2004) at p.916.

during the course and as a part of, a judicial proceeding in which they participate, if it has some relation to the proposed/actual judicial proceeding.

A party's *absolute immunity* from suit may be asserted by motion to dismiss. See, *Merrick v. Burns*, 43 P.3d 712 (Colo.App.2001) In *Merrick*, the Appellate Court of Colorado stated "On plaintiff's appeal, we address only the immunity issue because we deem it to be dispositive. We reject plaintiff's contention of error as to that issue, and we agree with the trial court that [attorney] Cosgrove's conduct was protected by the doctrine of *absolute immunity*." *Id.* at 713.

The *Merrick* court observed that "Communications preliminary to a judicial proceeding are protected by *absolute immunity* only if they have some relation to a proceeding that is actually contemplated in good faith." *Id.* at 714. The Appellate Court then analyzed a "Statement of Review" document prepared by Cosgrove, an attorney who had been retained to serve as an expert witness. The Court found that the document related to a judicial proceeding and that Mr. Cosgrove's conduct in preparing and submitting it was an essential and integral part of the judicial process such that he was 'entitled to immunity from civil liability.' *Id.* at 714.

Mr. Cosgrove had been sued for professional negligence, deceit, misrepresentation and violation of statute. The appellate court upheld dismissal of all claims against Mr. Cosgrove, further confirming that the immunity afforded under Colorado law is not qualified but rather absolute. "Consequently, we hold that the doctrine of *absolute immunity* was applicable to the "Statement of Review" prepared by Cosgrove." *Id.*

In *Mithcell v. Forsyth*, 472 U.S. 511, 525 (1985) the Supreme Court observed that "*the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.*" And this Court has previously observed that absolute immunity is of a nature that operates to defeat a suit at the outset. *See, Horwitz v. State Board of Examiners*, 822 F.2d 1508, 1512 (10th Cir. 1987) ("Absolute immunity, which affords complete protection from liability for damages, defeats suit at the outset. On the other hand, qualified immunity is an affirmative defense to be asserted by a government official performing discretionary functions.")

The application of the litigation privilege as granting an absolute and 'complete' immunity from suit was also recognized by the United States Court of Appeals for the Fifth Circuit in *Shanks v. AlliedSignal, Inc*., 169 F.3d 988 (5th Cir. 1999). In *Shanks*, the district court had denied a motion for summary judgment asserting absolute immunity premised on the application of the Texas litigation privilege. The Appellate Court allowed interlocutory appeal, stating: "We are convinced that Texas law regards its privilege for communications made in the context of judicial, quasi-judicial, or legislative proceedings as a *complete immunity from suit, not a mere defense to liability*. To insist on a final judgment before reviewing a denial of that immunity could deprive Allied of its entitlement to avoid the burdens of trial. Allied may therefore appeal the district court's rejection of its immunity claim as a collateral order under 28 U.S.C. §1291.". *Id*. at 992.

In *Cardtoons v. MLBPA*, 335 F.3d 1161, 1166 (10th Cir. 2003) this Court stated "Oklahoma has long recognized the litigation privilege under which attorneys, parties,

jurors, and witnesses are *immune from defamation liability* for statements made in the course of judicial or quasi-judicial proceedings, so long as the statements are relevant to the proceeding." (emphasis supplied)

Colorado's adoption of the litigation privilege, affording absolute immunity, is in harmony with that of Oklahoma and Texas. *See*, T.Leigh Anenson, Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers, 31 Pepp.L.Rev. Iss. 4 (2004) ("All but two states recognize absolute immunity for lawyers involved in litigation with very little variation from state to state.") "The absolute privilege is not a defense. Rather, absolutely privileged communications are not actionable." *CEDA Corp. v. City of Houston*, 817 S.W.2d 846, 849 (Tex.App 1991).

Respectfully submitted,

Neff Law Group PC

/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

**<u>Certificate of Compliance with Type-Volume Limit</u>**

1.  This document complies with the type-volume limit of Fed.R.App.P.32(c) and (g)(1) because, excluding parts of the document exempted by Fed.R.App.P.32(f), if any, this document contains not more than 4593 words.

2.  This document complies with the typeface requirements of Fed.R.App.32(a)(5) and the type-style requirements of Fed.R.App.32(a)(6) because this document has been prepared in a proportionally spaced typeface (Windows) in 13-point font, *Times New Roman*.

Respectfully submitted,
/s/ Nathan I. Neff
Attorney for Appellant, Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com

## CERTIFICATE OF SERVICE

I, Nathan I. Neff, attorney for appellant, Ortho-Tain, Inc., certify that on November 21, 2024 I caused a true and correct copy of the foregoing *Supplemental Brief of Appellant*, to be served and transmitted to all counsel of record using the CM/ECF system and/or via e-mail upon the following attorneys of record:

Brenna G. Fisher
Kevin Walton
1200 17th Street, Suite 1900
Denver, Colorado 80202
(303) 634-2000
*Attorneys for Appellee, Vivos Therapeutics, Inc.*

/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com