**No. 24-1061**
**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| VIVOS THERAPEUTICS, INC., a corporation, | ) | |
| Plaintiff/Appellee | ) | Appeal from 20-cv-1634 |
| vs. | ) | USDC, Dist. of Colorado |
| ORTHO-TAIN, INC., a corporation, | ) | Hon. William J. Martinez |
| Defendant/Appellant | ) | |

**BRIEF OF APPELLANT**

Oral argument is not requested.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

**Rule 26.1 Corporate Disclosure Statement**

Ortho-Tain, Inc. states that it has no parent corporation and that there are no publicly

held corporations/affiliates owning 10% or more of its stock.

**Table of Contents**

**Page**

Table of Authorities                                                                                          4-6

Statement of Related Cases                                                                              7

Jurisdictional Statement                                                                                  8

Statement of the Issues Presented for Review                                              10

I.        Statement of the Case                                                                       11

   A.  Involved Parties                                                                                    11

   B.  The "Vivos System" Course – February 7, 2020 – Dr. Brian Kraft     16

   C.  Ortho-Tain Asserts Claims Against Dr. Kraft, Vivos and Benco (4/3/20)     17

   D.  Relevant Procedural History                                                               21

II.       Summary of the Argument                                                             24

III.      Argument                                                                                       25

   A.  The District Court Erred When it Declined to Determine
       Whether the Circumstances Gave Rise to a Privilege                           24

   B.  There is No Independent Basis for the
       District Court's Exercise of Jurisdiction                                              34

   C.  The District Court Erred in Refusing to Dismiss Counts 1-2 of the FAC     36

   D.  The FAC is a "Shotgun Pleading" That Fails to Comply with Rules 8,10     40

**IV.     Conclusion and Prayer for Relief**

Attachments  -        Order (Doc. 86; 2/4/24)

Appellant's Appendix                                             Aplt.App. at pp. 001-384

## Table of Authorities

|  | **Page** |
|---|---|
| 28 U.S.C. §1332 | 8 |
| 28 U.S.C. §2201-02 | 8 |
| 28 U.S.C. §1291 | 8 |
| *Mitchell v. Forsyth*, 472 U.S. 511 (1985) | 8 |
| *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989) | 8, 32 |
| *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991) | 9 |
| *Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) | 9 |
| *Hill v. Department of the Air Force*, 884 F.2d 1318 (10th Cir. 1989) | 9 |
| Fed.R.Civ.P.15 | 10, 37 |
| D.COLO.LCivR.15.1(b) | 10, 37 |
| Fed.R.Civ.P.8 | 10, 37 |
| Fed.R.Civ.P.10 | 10, 37 |
| *Smith v. Montero*, 648 F.2d 602 (9th Cir. 1981) | 19, 29 |
| *Truck Equipment Service Co. v. Frauehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976) | 20, 29 |
| *Wright v. Casper*, 419 F. Supp.292 (E.D.Pa 1976) | 20 |
| *Walters v. Linhof*, 559 F.Supp.1231 (Dist. of Colorado 1983) | 26 |
| *Broker's Choice of America, Inc. v. NBC Universal*, 861 F.3d 1081 (10th Cir. 2017) | 26 |
| *Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358 (5th Cir. 1983) | 27 |
| *Veve v. Corporan*, 977 F.Supp.3d 93 (D.P.R., 2013) | 29 |
| *National Grange v. California Guild*, 334 F.Supp.3d 1057 (E.D.Cal.2018) | 29 |
| *New Markets v. Oppenheim*, 638 F.Supp.2d 394 (S.D.N.Y. 2009) | 29 |

*Truck Equipment Service Co. v. Frauehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976)     29

*Simon v. Oltmann*, 2001 WL 1035719 (N.D.IL, 2001)     31

*Cardtoons, L.C. v. MLBPA*, 335 F.3d 1161 (10th Cir. 2003)     31, 34

*Lerette v. Dean Witter Organization, Inc.*, 131 Cal.Rptr.592 (Sup.Ct.Ca.1976)     31

*HIRA Educational Services North America v. Augustine*, 991 F.3d 180 (3rd Cir.2021) 32

*Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir. 1974)     34

*Mid-Continent Cas. Co. v. Village of Deer Creek HOA*, 685 F.3d 9777 (10th Cir. 2012) 34

*McNickle v. Banker Life & Cas. Co.*, 888 F.2d 678 (10th Cir. 1989)     35

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994)     35

*Esposito v. United States*, 368 F.3d 1271 (10th Cir. 2004)     37

*Superior Manuf. Corp. v. Hessler Manuf. Co.*, 267 F.2d 302 (10th Cir.1959)     38

*USA, ex rel. Mathews v. HealthyCorp.*, 332 F.3d 293 (5th Cir. 2003)     39

*Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446  (N.D.Cal. 1975)     39

*Hall v. CIA*, 437 F.3d 94 (D.C. Cir. 2006)     39

*Lystn, LLC v. FDA*, 2019 WL 6038072  (D.Colo. 2019)     39

*International Academy v. Mentz*, 2013 WL 212640 (D.Colo. 2013)     41

*Allbrandt v. BOA, N.A.*, 2015 WL 1186660 (D.Colo.2015)     42

*G.H. Daniels v. Solis*, 2013 WL 5216453 (D.Colo.2013)     42

*Metzler v. Ball*, 2019 WL 3767054 at *8 (D.Colo.2019)     42

*Jones v. Lehmkuhl*, 2013 WL 6728951 (D.Colo. 2013)     42

*PVC Windoors, Inc. v. Babbitbay Beach Const.,* 598 F.3d 801 (11th Cir. 2010)     42

*Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)     42

*Baylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117 (11th Cir. 2014)     43

**Statement of Related Cases**

There has been a prior appeal, No. 21-1309. Doc.71; Aplt.App. at pp.361-373. There is another lawsuit pending in the United States District Court for the Northern District of Illinois (J.Hunt), *Ortho-Tain, Inc. v. Vivos Therapeutics, Inc.*, No.2020 cv 04301, which names as additional defendants, *Benco Dental Supply Co., Brian Kraft, Ben Miraglia, Mark Musso,* and *Kirk Huntsman.*

**Jurisdictional Statement**

Vivos is a Delaware corporation with a principal place of business in Colorado. Aplt.App. at p.182. Ortho-Tain is organized under the laws of Puerto Rico and is a corporate resident thereof. *Id*. at p.183. Vivos alleged the District of Colorado "*has subject matter jurisdiction over this matter under 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §1331 and 28 U.S.C. §§2201-02 because Vivos seeks declaratory relief related to a federal question.*" *Id.*

This Court's jurisdiction is invoked by the District Court's entry of an Order denying an absolute immunity defense, which is an immediately appealable event under the collateral order doctrine and reviewed *de novo* as with a final decision under 28 U.S.C. §1291. *See, Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) ("*Thus, the denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action.*"); *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989) ("*Our jurisdiction to review the denial of an absolute immunity claim arises under the 'collateral order' doctrine.* [*citing Nixon v. Fitzgerald*, 457 U.S. 731, 741-43 (1982)] *The denial of a qualified immunity claim is reviewable as a 'final decision' under 28 U.S.C. §1291.* [*citing Mitchell*] *Our review is de novo.*" *See*, *Order Denying Rule 12 Motion to Dismiss*, Aplt.App. at pp.345-354.[1]

---

[1] The Order from which appeal is taken was entered on 2/14/24 as Doc.86 in the Civil Docket. It is attached and referenced as Appellant's Appendix at pages 373-383.

Appellate review from a district court's order denying a motion to dismiss asserting an absolute immunity/litigation privilege defense was allowed in *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1369-70 (10th Cir. 1991); and where it was stated "*Defendant-appellant Herzfeld & Rubin, P.C. (H&R) appeals from an interlocutory order of the district court denying a motion to dismiss and a motion for summary judgment filed by itself and defendant Volkswagenwerk AG.*" "*Normally, our jurisdiction under 28 U.S.C. §1291 extends only to final orders. Appellant H&R correctly maintains that we have jurisdiction based on the collateral order doctrine as applied to a denial of absolute immunity.*" *Id.* at 1370.

This Court also enjoys pendent jurisdiction under the facts at bar. *See, Snell v. Tunnell*, 920 F.2d 673, 676 (10th Cir. 1990) ("*We have recognized the doctrine of pendent appellate jurisdiction to decide otherwise non-appealable issues,* [citations omitted]*, and have applied the doctrine in cases involving claims of immunity to determine that a plaintiff's substantive claims were barred.*"); and *Hill v. Department of the Air Force*, 884 F.2d 1318, 1320 (10th Cir. 1989) (accepting appeal from the district court's denial of a motion to dismiss asserting absolute and qualified immunity defenses and exercising pendent jurisdiction to reverse the district court.)[2]

The Order from which appeal is taken was entered on 2/14/2024. Aplt.App. at pp. 374-383. Ortho-Tain's *Notice of Appeal* was filed on 2/16/2024. *Id.* at p.384.

---

[2]Ortho-Tain's position on appellate jurisdiction is further set forth in its brief (Doc.010111018810) in *Response* to Vivos' *Motion to Dismiss Appeal for Lack of Jurisdiction*, and referred by Order entered 3/20/24, Doc.11075852.

9

**Statement of Issues Presented for Review**

Whether Ortho-Tain's conduct in issuing pre-suit, cease-and-desist and settlement demands to a prospective target of litigation, Benco Dental, is absolutely privileged as a matter of law and so a complete bar to Vivos' maintenance of common law defamation and contract interference claims against Ortho-Tain.

Whether the District Court erred in denying Ortho-Tain's Rule 12(b)(1) motion and implicitly finding there to be sufficient factual allegations plead in the FAC for the exercise of independent jurisdiction under the Declaratory Judgment Act, 28 U.S.C.§2201, *et seq.*

Whether the District Court erred in concluding that Vivos was not required by either Fed.R.Civ.P.15(d) and/or D.COLO.LCivR.15.1(b) to first seek and obtain leave of Court before proceeding to file an Supplemental Pleading that asserted two new theories of recovery (new Counts 1 and 2) based upon Ortho-Tain's alleged *post-filing* conduct.

Whether the District Court erred in refusing to strike pursuant to Fed.R.Civ.P.12(f), Counts 1 and 2 of Vivos' *First Amended Complaint* (FAC) where the FAC sought relief that was not of the same character as sought in Vivos' original complaint.

Whether the District Court erred in refusing to strike or dismiss the FAC on the basis that it constituted an impermissible "shotgun pleading" in violation of Fed.R.Civ.P.8 and Fed.R.Civ.P.10.

## I.   Statement of the Case

### A.   Involved Parties

**Ortho-Tain.** Ortho-Tain is in the business of manufacturing and selling pre-formed, removable orthodontic appliances used in the treatment of a variety of medical conditions, including malocclusions, narrow arches, underdeveloped airways and their associated health issues, including sleep disordered breathing. Aplt.App.at p.92. Through its founder, Dr. Earl Bergersen, Ortho-Tain has a 55-year history as an innovator and developer of treatment modalities to address the underlying root causes of pediatric sleep, breathing, and airway deficiencies by promoting and guiding growth of the pediatric patient, through the use of oral appliances and addressing improper oral habits. *Id.*

Dr. Bergersen and Ortho-Tain have had at least 511 patents registered worldwide for such oral appliances, which have been used in conjunction with Ortho-Tain's proprietary *HealthyStart® System*, to successfully treat of more than four million dental patients to date. *Id*. Ortho-Tain is also a service provider which trains dentists, pediatric dentists, and orthodontists in their use of Ortho-Tain products. *Id*. at p.89. Through Ortho-Tain's *HealthyStart® System* treatment plan review service, dental professionals are able to obtain case-specific feedback, product and treatment option information and recommendations for using Ortho-Tain's oral appliances. *Id.*

**Dr. Brian Kraft.** Dr. Kraft is not a party to the Colorado proceedings. In April of 2018, Dr. Kraft and Ortho-Tain entered into a written "*HealthyStart Speaking Agreement*" (Aplt.App. at pp.127-134), pursuant to which Dr. Kraft agreed to perform services as a "*HealthyStart Lecturer*" to give presentations to dental professionals regarding the use of

Ortho-Tain's oral appliances and *HealthyStart® System.* Aplt.App. at 96. Ortho-Tain's Agreement with Dr. Kraft included a 2-year "*Agreement Not to Compete*" (¶9) and a "*Governing Law and Jurisdiction*" clause (¶13). Dr. Kraft agreed "*not to directly or indirectly participate in a business that is substantially similar to the business operated by the Company for at least two (2) years after the last date contractor provides any services for Company*." Aplt.App. at 131. Dr. Kraft agreed that he would neither "*Solicit or attempt to solicit any business or trade from Company's actual or prospective clients, customers, or patients*" nor "*Divert or attempt to divert business away from the company.*" *Id.* Dr. Kraft agreed that "*This Agreement shall be governed by, and construed under the laws of the State of Illinois. Jurisdiction and venue for all purposes shall be in the County of Cook, State of Illinois.*" *Id.* at 132.

**Dr. Mark Musso.** Dr. Musso is not a party to the Colorado proceedings. As of the year 2016 and for all times relevant thereafter Dr. Mark Musso was a dentist and an Ortho-Tain/*HealthyStart® System* provider with offices in Garland, Texas. *Id.* at p.90. During this time, several of Dr. Musso's pediatric patients, including "*Isaac*" "*Allie*" "*Ava*" "*Ella*" "*Matthew*" and "*Nicolas*" were treated exclusively with Ortho-Tain's oral appliances and its *HealthyStart® System* with excellent results. *Id.* at 100. True and correct copies of Ortho-Tain's *HealthyStart® System* records (photographs, invoices, appliance order forms) for each of the six pediatric cases are attached in Appellant's Appendix at 320-339.[3]

---

[3]The last names of the pediatric subjects have been redacted on the *HealthyStart®
System* records attached to the Appendix to protect the subject's privacy interests.

**Kirk Huntsman**. Mr. Huntsman is not a party to the Colorado proceedings. Mr. Huntsman is a former marketing agent for Ortho-Tain. He is the founder of several "Vivos" entities, including appellee, Vivos Therapeutics, Inc. Aplt.App. at p.95.

In October of 2013, and several years before Mr. Huntsman formed Vivos (2016), Ortho-Tain and Mr. Huntsman entered into a written *Non-Disclosure Agreement* ("NDA"), pursuant to which Ortho-Tain agreed to and did provide Mr. Huntsman with certain Confidential Information regarding Ortho-Tain's plans for the marketing, sale and distribution of certain orthodontic appliances and procedures to be manufactured and developed by Ortho-Tain. *Id.* at pp.96-98. A true and correct copy of the *NDA* is attached as Aplt.App. at pp.135-141.

The NDA with Mr. Huntsman includes a governing law and jurisdiction clause providing: "*This agreement shall be governed by, and construed in accordance with the internal laws and not the choice of laws, of the State of Illinois. The parties agree that any dispute, including counterclaims, that arise hereunder shall be adjudicated in the State of Illinois and the venue of Cook County and the parties waive any and all rights to object to said jurisdiction and venue in the courts located in Chicago, Illinois.*" *Id.* at p.134.

In June of 2014 and thereafter Ortho-Tain provided Confidential Information to Mr. Huntsman which included proprietary research data, including on craniofacial measurements, airway development, and maxillary and mandibular bone growth and development. *Id.* at p.97. Ortho-Tain provided product exemplars of its proprietary, transverse measurement ruler, its *Nite-Guide*® and *Occlus-o-Guide*® oral appliances, its Initial Patient/Parent Questionnaire, Compliance Charts and written instructions on proper

patient use and techniques for assessing development, planning and taking measurements and progress photos. *Id.* Ortho-Tain provided Mr. Huntsman access to a wealth of research data on craniofacial growth and development, patient case records, including marketing photographs, charts, diagrams, videos and Power Point slides. *Id.* Through Ortho-Tain, Mr. Huntsman was introduced to several *HealthyStart® System* providers and paid-presenters, including dentists Brian Kraft, Mark Musso and Ben Miraglia. *Id.*

**Vivos.** Appellee Vivos Therapeutics, Inc. ("Vivos") is a corporation originally organized under the laws of Wyoming and later re-organized under the laws of Delaware. *Id.* and see FAC, Aplt.App. at p.183. Vivos was originally incorporated on 7/7/2016 under the name "*Corrective Biotechnologies, Inc.*" before filing amendments to change its name to "*Vivos Biotechnologies, Inc.*" (9/6/16) and to "*Vivos Therapeutics, Inc.*" (3/2/18). *Id.*

Vivos is in the business of selling its Vivos Guide System, including oral appliances, to dental professionals who treat, among others, pediatric patients presenting with certain medical conditions, including malocclusions, narrow arches and underdeveloped airways, and their associated health issues, including the underlying root causes of sleep disordered breathing. Aplt.App. at p.95; and Vivos' FAC, *Id.* at pp.181-184.

**Benco Dental Supply Co.** Benco is not a party to the Colorado proceedings. Benco is a Pennsylvania corporation with corporate headquarters in Pittston, PA. Benco is a distributor of dental supplies and equipment and a provider of dental consulting and dental equipment services. Aplt.App. at p.95.

As of 8/8/2019 there existed an agreement between Benco and Vivos by which Benco would be paid compensation in exchange for Benco's marketing of the "Vivos

System" and its sponsorship of Vivos' marketing and/or sales presentations. *Id.* at p.97. On 8/8/2019 Benco and/or Vivos issued a news release which announced that Benco had formed a '*strategic alliance*' with Vivos to collaborate and "*help make all dentists in the United States aware*" of Vivos' "*unique apnea treatment.*" *Id.* at p.98.

The news release stated that Benco had signed a cooperative agreement "*to help broaden the Vivos System's reach and ensure all dentists in the United States are aware of their patented system for treating obstructive sleep apnea.*" *Id.* The announcement stated the partnership with Vivos would include a "*series of events beginning in October 2019*" as well as twenty-seven (27) seminars, one in every Benco sales territory, during the first quarter of 2020. *Id.* "*Benco customers in all 50 states will have an in-person opportunity to learn more about the treatment, how it helps OSA suffers and increases the practitioner's value to patients, plus helpful resources available for integrating it into their practice.*" *Id.*

On 8/16/19 Benco's website announced that it had '*signed a cooperative agreement with Vivos Therapeutics, a company that focuses on addressing the causes of mild to moderate obstructive sleep apnea (OSA).*" *Id.* The Benco website announcement stated that the Vivos System made use of '*revolutionary technology*' and represented the "*first-ever hope for a lasting solution to the problem of sleep apnea.*" *Id.* at p.98.

One of the planned marketing/sales seminars sponsored by Benco pursuant to its agreement with Vivos was styled as a "continuing education" (CE) course and entitled "*Learn How the Vivos System Induces the Remodeling of Human Airway Tissues*". *Id.* at p.99. Per the published advertising, this CE was being presented via an on-line webinar broadcast and/or live to attendees across the country on: 1/29/20 (Roswell, GA), 1/30/20

(Raleigh, NC), 2/7/20 (Flower Mound, TX), **2/7/20 (St. Louis, MO)**, 2/20/20 (Charlotte, NC), 2/20/20 (Houston, TX), 2/21/20 (Costa Mesa, CA), 2/27/20 (Fresno, CA), 2/28/20 (Omaha, NE), 2/28/20 (Newark, CA), 3/11/20 (Philadelphia, PA), 3/12/20 (McLean, VA), 3/13/20 (Florence, IN), 3/13/20 (Philadelphia, PA), 3/19/20 (Hauppauge, NY), 3/19/20 (Live Webinar), 3/19/20 (Burlington, MA), 3/20/20 (Tempe, AZ), 3/20/20 (Colorado Springs, CO), 3/20/20 (Live Webinar), 3/26/20 (Independence, OH), 3/26/20 (Live Webinar), 3/26/20 (Livonia, MI), 3/27/20 (Renton, WA), 3/27/20 (Hollywood, FL), and 3/27/20 (Live Webinar). Aplt.App. at p.99.

**B.     The "Vivos System" Course – February 7, 2020 – Dr. Brian Kraft**

As of 2/7/2020 Dr. Kraft and Vivos had entered into an employment or other services agreement. *Id*. Dr. Kraft was marketed as a *Vivos Clinical Advisor* and on 2/7/20 was an observed presenter for a live presentation in St. Louis, MO entitled "*Learn How the Vivos System Induces the Remodeling of Human Airway Tissues*". *Id.* at pp. 99-100.

The public was invited to attend and so Ortho-Tain dispatched an agent, who took pictures of Dr. Kraft presenting the before-during-and-after photographs of a half a dozen pediatric cases, "*Isaac" "Allie" "Ava" "Ella" "Matthew*" and "*Nicholas*". *Id*. at 100. True and correct photographs of Dr. Kraft's 2/7/20 presentation are attached as Aplt.App. at pp.340-349. Dr. Kraft represented that Vivos had a treatment "system" and/or an oral appliances that could be used for the treatment of pediatric dental patients suffering from sleep disordered breathing, including mild to moderate obstructive sleep apnea. *Id.* at p.94.

Ortho-Tain was never mentioned and each of the pediatric case photographs had the name "Vivos" superimposed on it. *Id.* at 100; and at pp.340-349. None of the showcased

patients had ever been treated with any Vivos appliance or system. *Id.* at p.100. Rather, the *true* source or origin of the products and system services used to obtain the showcased treatment outcomes was Ortho-Tain. *See*, Ortho-Tain records (2016-2018) for "*Isaac*" "*Allie*" "*Ava*" "*Ella*" "*Matthew*" and "Nicholas". *Id.* at pp.320-339.

### C.    Ortho-Tain Asserts Claims Against Dr. Kraft, Vivos and Benco (4/3/20)

The "Spring 2020 Communications" tendered as Docs. 9-1 through 9-9 consisted of one letter from Ortho-Tain's CEO to Benco's CEO, sent in early April of 2020 (Doc.9-1), and then approximately ten e-mails or letters exchanged between Ortho-Tain's legal counsel (Neff Law Group, P.C.) and Benco's General Counsel (Robert Bisal), from mid-April to early June, 2020. Aplt.App. at 036-91; Doc.9-2 to Doc.9-9.

As of the spring of 2020 there was a global pandemic then on-going that resulted in stay-at-home directives and the closure or curtailment of many businesses and public spaces, including courthouses across the country. Benco was in no rush to become sued and Ortho-Tain was seeking Benco's cooperation.

Ms. Stevens' 4/2/2020 letter to Benco's CEO (Doc.9-1, Doc.40-1, Aplt.App.036-40, and 217-220) informed Benco that at least two of Vivos' Clinical Advisors, Dr. Kraft and Dr. Miraglia, had showcased the before and after photographs of certain pediatric cases to falsely imply or state that the outcomes presented had been achieved through the use of Vivos oral appliances or 'system'. Ms. Stevens' letter informed that the showcased children had, instead, all achieved their favorable outcomes by treatment with Ortho-Tain's oral appliances and implementing HealthyStart® treatment System. *Id.*

Ms. Stevens' letter informed Benco that Ortho-Tain had a contract with Dr. Kraft that barred him from working for a competitor of Ortho-Tain without its express written approval. *Id.* Ms. Stevens' letter informed that Ortho-Tain had not provided such approval to Dr. Kraft as of February of 2020 before he served as a pitchman for Vivos at a Benco-sponsored, "Vivos System" event in Missouri. *Id.* Ms. Stevens' letter informed Benco that Ortho-Tain had not approved of Dr. Kraft/Vivos' use of the six Ortho-Tain-treated pediatric case study photographs to sell Vivos' products at the Benco-sponsored CLE event. *Id.* Ms. Stevens' letter informed that Ortho-Tain did not consent to the use of such photographs in any other Benco-sponsored, Vivos sales-and-marketing campaigns. *Id.*

Ms. Stevens' letter also referenced Dr. Ben Miraglia's 3/26/20 on-line presentation of a Vivos' "*Wellness Summit*" in which several other Ortho-Tain-appliance-treated pediatric cases were marketed, instead, as Vivos success stories. *Id.* at pp.106-111.

Ms. Stevens' (4/2/20) letter to Benco stated that "*Ortho-Tain takes this matter very seriously and hopes that Benco will as well. Falsely claiming the accomplishments of a competitor as one's own in marketing products or services is a violation of federal law*." The letter then cited to the Lanham Act, 15 U.S.C. §1125(a), quoted from it and informed of Ortho-Tain's intention to enforce its legal rights through legal counsel. *Id.*

Benco's General Counsel, Robert Bisal, responded to Ms. Stevens' letter with a request that Ortho-Tain corroborate its assertions with evidence, which Ortho-Tain provided in several letters and e-mails, with attachments, sent from Ortho-Tain's retained counsel (NLG) to Mr. Bisal. Doc.9-2 to 9-9; Aplt.App. at 041-091.

Starting on 4/17/2020 the undersigned counsel for Ortho-Tain sent an e-mail to counsel for Benco that attached a copy of Ortho-Tain's contract with Dr. Kraft, photographs of Dr. Kraft's 2/7/20 Vivos-presentation, Ortho-Tain's appliance order records and case photographs for the same group of pediatric cases that Dr. Kraft had presented as "Vivos" treatment success stories. Doc.9-2, Aplt.App. at 050-53. This e-mail referenced Ortho-Tain's non-compete agreement with Dr. Kraft and it offered several Lanham-act case authorities for Mr. Bisal's consideration as evidence of Ortho-Tain's good faith basis for its expressed belief that it had suffered harm due to unlawful conduct.

The eight or so letters or e-mails exchanged by counsel thereafter were all in this same vein. The following day, 4/18/20, an e-mail was sent to Mr. Bisal which attached five videos of Dr. Miraglia presenting the same Ortho-Tain-appliance treated pediatric case photographs, some at a presentation for Ortho-Tain and some from the Vivos' "*Airway Summit*" of 3/26/2020. Doc.9-3; Aplt.App. at 41-43.

On 4/20/20 Ortho-Tain's counsel sent an e-mail to Mr. Bisal, responding to his request for CDs of Dr. Miraglia's presentations to be created and served on Benco by courier. Doc.9-4; Aplt.App. at 044-49. This 4/20/20 e-mail sought Benco's cooperation to discover the extent of harm caused by the use of re-labeled pediatric case photographs, and to effectuate a cure and mitigate against future harm. *Id.*

On May 11, 2020 counsel for Ortho-Tain sent an e-mail and letter to counsel for Benco which discussed the merits of Ortho-Tain's legal claims and of a then-newly published plan for a future, Benco-sponsored, "Vivos System" seminar. This letter included citation to three, deceptive advertising, Lanham-Act cases of *Smith v. Montoro*,

19

648 F.2d 602, 606-07 (9th Cir. 1981), *Truck Equipment Service Co. v. Frauehauf Corp.*, 536 F.2d 1210 (8th Cir. 1976), and *Wright v. Casper*, 419 F.Supp.292 (E.D.PA 1976). This letter was attached as an exhibit to the Amended Complaint (Doc.40-2; Aplt.App. 221-225) and as Doc.9-2 to Ortho-Tain's first Rule 12 Motion to Dismiss. Aplt.App. at 050-53.

On 5/26/20 counsel for Ortho-Tain sent an e-mail to Mr. Bisal requesting reciprocal cooperation from Benco and its production of digital copies of all Benco-sponsored "Vivos System" courses so that Ortho-Tain could ascertain the extent to which sales had been diverted, and consumers deceived, by the use of re-labeled photographs of Ortho-Tain-treated cases in Vivos' sales' and marketing campaigns. Doc.9-5; Aplt.App.054-57. This 5/26/20 e-mail included a proposal for a settlement conference call and for correcting the record to attendees of Dr. Kraft's 2/7/20 presentation. *Id.*

Another four e-mails or letters were thereafter exchanged during the first week of June. Docs.9-6 to 9-9; Aplt.App.058-75. The e-mail of 6/1/20 enclosed a letter to Mr. Bisal and attached a *draft* Complaint at Law. Aplt.App.058-75. The exact same allegations in the draft complaint would later be asserted against Benco in Ortho-Tain's IL-complaint. Doc.9-10; Aplt.App.092-141.

Mr. Bisal responded by e-mail on 6/2/20 and informed that Benco's CEO would agree to participate in further settlement conference call only if Ortho-Tain would provide advanced answers to some additional questions. Doc.9-7; Aplt.App.076-84. Ortho-Tain's answers were provided via letter dated 6/3/20 and entitled "*Settlement Discussions*". Doc.9-7, Aplt.App. at 075-78.

This 6/3/20 letter discussed Ortho-Tain's position that Lanham Act liability can arise not only from affirmatively misleading statements in marketing but also from partially correct statements, misleading implication, and/or a party's omission or failure to disclose material facts. This letter cited and referenced four additional Lanham Act cases in support of Ortho-Tain's position. This letter was attached as an exhibit to Vivos' Amended Complaint. Doc.40-4; Aplt.App. at 228-232.

On 6/5/20 Mr. Bisal sent an e-mail asking that counsel for Ortho-Tain provide a date and time for a future settlement conference call between the two companies' CEOs. Doc.9-8; Aplt.App. at 085-88. On 6/8/20 counsel exchanged e-mails confirming that the parties' planned conference call discussion for later that day would be kept confidential and would not be recorded. Doc.9-9; Aplt.App. at 089-91.

Unbeknownst to Ortho-Tain, however, on 6/5/20, Vivos had filed its lawsuit against Ortho-Tain in federal district court in Colorado. Doc.1, Aplt.App. at 013-022.

### D.    Relevant Procedural History

Vivos' original complaint (Doc.1; Aplt.App. at p.15) alleged, in salient part:

15.    In an apparent attempt to improperly monitor and interfere with Vivos's business, Defendant [Ortho-Tain] has engaged in acts of corporate espionage of Vivos, including sending agents to monitor Vivos presentations.

16.    In the spring of 2020, Defendant [Ortho-Tain] and its agents sent a series of written communications to Benco regarding Vivos presentations at Benco conferences.

Vivos' complaint alleged that Ortho-Tain's '*spring of 2020*' communications gave rise to liability for *Libel Per Se* (Count 1), *Slander Per Se* (Count 2), and *Intentional Interference with Contract/Business Relations* (Count 3). *Id.* at pp.16-19. Count 4 of the

original Complaint asked for a Declaration that Vivos conduct in marketing and selling its goods through Benco-sponsored seminars had *not* violated the Lanham Act. *Id.* at p.15.

On 7/22/20 Ortho-Tain filed an 11-Count Complaint in Illinois against Vivos, Benco, Kirk Huntsman and several Vivos Clinical Advisors, Drs. Brian Kraft, Ben Miraglia and Mark Musso. Doc.9-10; Aplt.App. at pp.092-141.[4]

On 7/23/20, Ortho-Tain responded to Vivos' complaint in Colorado by filing a Rule 12(b)(1) and (b)(6) *Motion to Dismiss.* Aplt.App. at 023-35. The motion attached, as exhibits, the written communications exchanged between Ortho-Tain and Benco, from Ms. Stevens' initial letter, sent 4/3/20, to Mr. Bisal's 6/8/20 e-mail promising to keep the parties' settlement discussions confidential. Aplt.App. at 036-91; Docs.9-1 to 9-9.

Ortho-Tain's *Motion to Dismiss* asserted that its conduct in issuing pre-suit, cease-and-desist and settlement demand letters, and the statements made in settlement conference calls with a prospective target of litigation, Benco, were all absolutely privileged under the common law and the Restatement (2nd) of Torts, §586-588, as adopted in 48 states, including Colorado where Vivos claims to have suffered its' injuries. *Id.* at pp.023-35.

Ortho-Tain's first motion to dismiss (Doc.9) attached, as an exhibit (Doc.9-10) a copy of Ortho-Tain's Complaint at Law, as filed in Illinois against Vivos, Benco, Dr. Kraft and Huntsman, along with two of that Complaint's exhibits: Ortho-Tain's written contracts with Dr. Kraft and Mr. Huntsman. Aplt.App. at 092-141.

---

[4]The District Court in the Illinois litigation, Hon. John Robert Blakey, has since denied both Vivos' Rule 12 *Motion to Dismiss* and its §1404 *Motion to Transfer* to Colorado. *See*, 20cv04301, Doc.37, entered 5/14/21.

Ortho-Tain's Rule 12 Motion asserted that there was no independent basis for the District Court's exercise of jurisdiction under the Declaratory Judgment Act and argued that Vivos filing of a lawsuit in Colorado was an improper, tactical maneuver for the purpose of procedural fencing or to avoid the effect of contract agreement forum-selection provisions or to provide an arena for a race to *res judicata*. *Id.* at pp. 33-34; and at p.163.

Vivos filed its *Response* brief in opposition on 8/13/20 and Ortho-Tain filed its *Reply* in support on 8/27/20. Aplt.App. at 142-159; and at 160-170.

On 2/2/21 the District Court, acting 'sua sponte' entered an Order in which it dismissed Vivos' Complaint, *without* prejudice, for failure to comply with Rule 8. Aplt.App. at p.178-179. The District Court's Order concurrently "*denied as moot*" Ortho-Tain's Rule 12 *Motion to Dismiss*. *Id.*

On 2/12/21 Vivos filed a six (6) count, *First Amended Complaint* (FAC), along with 15 new exhibits, purporting to allege claims against Ortho-Tain for a violation of the Lanham Act (Count 1), a violation of the Colorado Consumer Protection Act, C.R.S. §6-1-101 (Count 2), *Libel Per Se* (Count 3), *Slander Per Se* (Count 4), *Intentional Interference with Contract/Business Relations* (Count 5) and for a *Declaratory Judgment* that Vivos had *not* committed a Lanham Act violation (Count 6). *Id.* at 180-216.

On 2/26/21 Ortho-Tain filed a Rule 12(b)(1) and (b)(6) *Motion to Dismiss.* Doc.45; Aplt.App.273-288. As with its first Rule 12 Motion to Dismiss, Ortho-Tain's second Rule 12 Motion to Dismiss asserted that (a) the absolute litigation privilege barred Vivos' (original) claims for defamation/contract interference (now in Counts 3-6), and sought dismissal of Count 6 (Declaratory Judgment) for lack of a valid jurisdictional basis. The

motion to dismiss asserted that the remainder of the amended complaint, containing new counts (Lanham Act and Colorado Consumer Protection Act) should be stricken and dismissed due to Vivos' non-compliance with Fed.R.Civ.P.15(d) governing *Supplemental Pleadings*. Ortho-Tain's Motion also contended that the FAC's allegations constituted impermissible 'shotgun' pleadings in violation of Fed.R.Civ.P. 8 and 10. *Id.*

On 9/3/21 the District Court entered an Order denying Ortho-Tain's Rule 12 *Motion to Dismiss*. *Id.* at 350-359. On 9/7/21 Ortho-Tain filed its *Notice of Appeal*. *Id.* at p.355.

On 6/21/22 this Court entered an order reversing and remanding: "*Accordingly, because the privilege can apply to attorneys and parties alike, the district court should have analyzed all of the Spring 2020 Communications, including Stevens' letters and Neff's follow-up communications, together. Under that analysis, the relevant inquiry is whether OT's Spring 2020 Communications related to the Northern District of Illinois litigation and whether that litigation was contemplated in good faith. We thus remand to the district court for proper analysis.*" Doc.71; Aplt.App. at 365.

On 2/14/2024, the District Court re-issued its opinion, again denying Ortho-Tain's Motion to Dismiss. Doc.86; Aplt.App. at 374-383.

On 2/16/24, Ortho-Tain filed its Notice of Appeal. Doc.87; Aplt.App. at 384.

## II.   Summary of Argument

The District Court refused to comply with the appellate directive that it perform a proper analysis of the 'spring of 2020' communications to assess whether they related to Ortho-Tain's filed-complaint in Illinois.

Ortho-Tain's conduct in issuing pre-suit, cease-and-desist and settlement demand letters to a prospective target of litigation, Benco Dental, is absolutely privileged as a matter of law and serves as a complete bar to Vivos' maintenance of common law defamation and contract interference claims. All of the 'Spring of 2020' communications relate directly to Ortho-Tain's Complaint filed in Illinois.

Fed.R.Civ.P.15(d) requires a party to first file a motion, provide reasonable notice and obtain leave of court before proceeding to file a supplemental pleading alleging liability based upon a transaction, occurrence or event that happens after the date of the pleading to be supplemented. Vivos never filed a motion nor submitted a proposed supplemental pleading so as to lawfully plead two new theories of recovery in the FAC, which are of a completely different character than the claims sought to be pled in the original complaint. The Court erred in holding that Vivos was not required to file a motion and submit a proposed pleading under Rule 15(d) in order to file the supplemental pleadings in new Counts 1 and 2.

Fed.R.Civ.P.8 and 10 do not permit shotgun pleadings whereby a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors. Vivos' FAC does just that and so fails to provide statutory notice.

## III.    Argument

### A.    The District Court Erred When it Declined to Determine Whether the Circumstances Gave Rise to a Privilege

In reversing and remanding in the prior appeal this Court directed the District Court to engage in a "proper analysis" of approximately ten 'spring of 2020' communications to determine whether the *factual* circumstances gave rise to a privilege. Aplt.App. at 365.

Instead of doing so the District Court's Order informs: "*Given that this action is at the pleading stage, and that the Court must construe the allegations in the light most favorable to Vivos, the Court* **declines to delve into the factfinding endeavor** *of whether the communication in spring of 2020 were made in good faith contemplation of litigation. Finding that Ortho-Tain has failed to set forth a convincing basis for dismissal on this ground, the Motion is denied to the extent it seeks dismissal of the defamation and intentional interference with contractual relations claims based on litigation privilege.*" Aplt.App. at 380-381. (emphasis supplied)

The District Court's refusal to perform a proper analysis upon remand is without any justification. "*It is a preliminary question of law for the court to determine whether the circumstances give rise to a privilege.*" *Walters v. Linhof*, 559 F.Supp.1231, 1236 (Dist. of Colorado, 1983). The District Court's 'finding' that Ortho-Tain had '*failed to set forth a convincing basis for dismissal*' is clearly erroneous. Not only had Ortho-Tain supplied all of the 'spring of 2020' communications, along with a copy of its IL-Complaint against Vivos/Benco, as Docs.9-1 through 9-10, but four of those communications had been attached as exhibits to Vivos' Amended Complaint. Aplt.App. at 217-232.

In ascertaining the merits of Ortho-Tain's Rule 12 Motion, the District Court was required to review and assess the legal effect of the exhibits attached to Vivos' Amended Complaint as well. "*When a complaint includes an attached exhibit 'its legal effect is to be determined by its terms rather than by the allegations of the pleader.'* *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). "*This means that, although we accept all well-pled allegations as true and draw all reasonable*

*inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.*" *Id.*

As of April of 2020 Benco had entered into an agreement with Vivos to promote and sponsor its marketing campaigns and to share in the profits from sales generated from same. Ms. Stevens' letter (Aplt.App at 217-220) informed of Ortho-Tain's belief that Dr. Kraft had breached a non-compete agreement, that he and other Vivos' agents had used relabeled of photographs of Ortho-Tain-appliance-treated pediatric case studies (completed years before Vivos was even formed) and that such conduct violated the Lanham Act.

The undersigned counsel's first e-mail communication (4/17/20) to Mr. Bisal attached further evidence and included citation to not less than eight case authorities discussing unfair and deceptive marketing practice liability. Such facts and circumstances evidence the existence of time-consuming, *serious* consideration of Ortho-Tain's legal claims *vis a vis* several actors and of its good-faith basis for engaging Benco. *Id.* at 50-53.

The communications that followed thereafter were all exchanged between counsel, related to the same subject matter, included further citation to case authority and were accompanied by a draft settlement proposal for Benco's cooperation and a draft complaint at law. Many hours were spent marshalling the evidence and the case law cited or quoted in the pre-suit communications with Benco and more still to craft a proposed cure and a draft complaint. Such facts evidence Ortho-Tain's good-faith, serious contemplation of litigation. *See, Coastal States Marketing, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983) ("*The litigator should not be protected only when he strikes without warning. If litigation*

27

*is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.*").

Ortho-Tain's communications with Benco advocated Ortho-Tain's legal position that the Benco-sponsored "Vivos System" courses were an unlawful attempt to misappropriate or profit from Ortho-Tain's talents and workmanship, as well as a breach of one or more contract agreements. That Ortho-Tain had a good faith basis for believing as much arose from several facts, including: (1) Ortho-Tain had entered into two written contracts, one with Dr. Kraft containing a non-compete provision and one with Kirk Huntsman containing a non-disclosure and  confidentiality clause; (2) Ortho-Tain knew that its oral appliance products had been used to successfully treat the several pediatric cases identified herein many years *before* Vivos was even a company because Ortho-Tain had the treatment/progress photographs and order form records for those pediatric cases; (3) Ortho-Tain had previously retained Dr. Kraft and Dr. Miraglia, who had lectured on behalf of Ortho-Tain, some involving the same pediatric cases, (4) Ortho-Tain had introduced (Vivos founder) Kirk Huntsman to Drs. Kraft and Miraglia; (5) Ortho-Tain had given Mr. Huntsman with a wealth of confidential information for marketing, including photographs of Ortho-Tain-appliance-treated pediatric cases and proprietary research data; and (6) Dr. Kraft and Dr. Miraglia's presentations for Vivos in February/March of 2020 had been attended by Ortho-Tain's agents, who took photographs/screenshots of the presentations so as to confirm that the Vivos presentations had, in fact, used re-labeled photographs of Ortho-Tain-appliance-treated children.

Some of the case authorities shared with counsel for Benco (Doc.9-2; Aplt.App. at 50-53), included *Veve v. Corporan,* 977 F.Supp.2d 93 (D.P.R., 2013) (Lanham Act's prohibition against making false statements of fact was satisfied where the defendant's advertisements used photographs that depicted the plaintiff-tour company's property); *National Grange v. California Guild*, 334 F.Supp.3d 1057 (E.D.Cal.2018) (finding CA-Guild, a disaffiliated chapter, to have made false and misleading representations that materially affected and injured  national farmer's association, in violation of the Lanham Act, where CA-Guild's membership brochures falsely took credit for national association's organization and chapter's former website contained links to historical publications of state farmer's association as though they were the publications of the CA-chapter); *NewMarkets v. Oppenheim*, 638 F.Supp.2d 394 (S.D.N.Y. 2009) (holding investment fund managers' allegation that competitors' private placement memo falsely identified it as involved in funds' management was sufficient to state false advertising claim under Lanham Act.); and *Truck Equipment Service Co. v. Frauehauf Corp*., 536 F.2d 1210, 1216 (8th Cir. 1976) (finding defendant's use of re-labeled photographs of plaintiff's products in defendant's sales' literature to be a false representation prohibited by §43(a): "*the use of another's product, misbranded to appear as that of a competitor (i.e., reverse passing off), has been repeatedly found to be 'a false designation of origin' actionable under section 43(a).*").

Ortho-Tain's letter of 5/11/20 to Benco/Bisal cited to the case of *Smith v. Montero*, 648 F.2d 602, 606-607 (9th Cir. 1981), in which Court held the re-labeling of another's products to be a deceptive and unlawful business practice that violates the Lanham Act. In describing the conduct and declaring it unlawful the Court in *Smith* observed that

"*defendants not only removed appellant's name from all credits and advertising, they also substituted a name of their own choosing. Appellee's alleged conduct therefore amounts to express reverse palming off. **As a matter of policy, such conduct, like traditional palming off, is wrongful because it involves an attempt to misappropriate or profit from another's talents and workmanship**. Moreover, in reverse palming off cases, the originator of the misidentified product is involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the satisfactory product. [] The ultimate purchaser (or viewer) is also deprived of knowing the true source of the product and may even be deceived into believing that it comes from a different source*.*" (emphasis supplied).

Ortho-Tain's letters to Benco expressed Ortho-Tain's subjective, good-faith belief that it was similarly situated as the plaintiff in *Smith, supra*. Ortho-Tain was never credited as the source or origin of the goods that had actually achieved the showcased results. Vivos had substituted its own name on the showcased pediatric case photographs to lead attendees to believe, incorrectly, that Vivos was the source or origin of the appliances used to achieve the showcased outcomes. The effect of the deception was to imply that Vivos was possessed with a multi-year, track-record of successfully reshaping pediatric airways when, in fact, Vivos was still a fairly new company (2016) that had undergone three name changes in three years and which did not have its own pediatric case success stories to showcase.

Ortho-Tain's letter of 5/11/20, quoting from *Smith/Montero, supra*, was attached as an exhibit to Vivos' Amended Complaint. Doc.40-2; Aplt.App. at 221-225. The Amended Complaint alleged that this letter was evidence of unlawful conduct by Ortho-Tain;

however, under the standard of decision the legal effect of this letter-exhibit was supposed to be determined by its own terms, not those of the pleader.

To the extent there was a conflict then the exhibit should have controlled. The District Court's opinion never addresses the conflict between the pleader's allegations that Ortho-Tain's letters constituted unlawful defamation and Ortho-Tain's asserted defense that it was absolutely privileged, as a matter of law, to publish defamatory material in pre-suit communications sent to a prospective target of litigation and in relation thereto.

Ortho-Tain's issuance of pre-suit letters inviting Benco's cooperation and resolution of a legal dispute is a common practice that furthers the public interest of encouraging settlement in lieu of litigation. *See, Simon v. Oltmann*, 2001 WL 1035719 (N.D.Il. 2001) at *7 (dismissing defamation claims stating "*After reviewing the complaint and the letters attached to it, the court finds that the letters to which Oltmann so vehemently objects are nothing more than ordinary demand letters. The letters invite cooperation and resolution of the dispute prior to formal litigation, a public interest deserving of protection.*").

The Courts have repeatedly urged (or required) putative litigants, and their counsel, to avoid litigation, if possible, by contacting the opposing party to inquire whether settlement of the dispute can be reached. *See, e.g.*, *Cardtoons, L.C. v. MLBPA*, 335 F.3d 1161, 1167 (10th Cir. 2003) (holding threat of legal action in cease-and-desist letters to be absolutely privileged and observing "*Requiring potential plaintiffs to bypass the post office on the way to the courtroom would undermine our longstanding policy favoring efforts to avoid litigation.*"); and *Lerette v. Dean Witter Organization, Inc.*, 60 Cal.App.3d 573, 577 131 Cal.Rptr.592, 594 (1976) ("*As any competent attorney is aware, access to the courts*

*is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts – even without the filing of a lawsuit – it is incumbent upon the attorney to pursue such a course of action first.*").

The 'spring of 2020' communications evidence Ortho-Tain's subjective, good-faith belief that it had legal claims that it was serious about prosecuting in civil litigation, if pre-suit settlement did not resolve the disputes. The District Court never found there to be an insufficient record for it to make the necessary determination. The record is ample and sufficient to determine whether the absolute litigation privilege applies.

Orth-Tain respectfully requests that this Court enter an order, reversing and directing the District Court, on remand, to enter an order dismissing any and all claims in the Amended Complaint that incorporate or are based upon the "Spring 2020 Communications." Doing so would be consistent with prior precedent from this Court and its sister court on the Third Circuit. *See, e.g., Valdez v. City and County of Denver*, 878 F.2d 1285, 1290 (10th Cir. 1989) ("*Because the record viewed as a whole indicates that every action of the defendants Herrera and MacFarlane to which Valdez objects was taken under the direction of a state court judge, the judgment of the district court is reversed and this cause remanded with instructions to dismiss the complaint as to Herrera and MacFarlane in their individual capacities on the basis of absolute immunity.*")

The case facts in *HIRA Educational Services North America v. Augustine*, 991 F.3d 180, 186 (3rd Cir. 2021) presented a similar situation, in as much as the district court in that case also declined to perform a proper analysis of the record before it. In *HIRA*, the defendants, several state legislators, filed a motion to dismiss asserting that their letters to

the Governor and telephone conferences with the plaintiffs were absolutely privileged and immune from suit.

The district court in *HIRA* had rejected the defendants' motions to dismiss as '*premature'* and held that the legal issues concerning immunity "*were mired in facts, which need to be developed through the discovery process.*" *Id*. at 186-87. The defendants filed an immediate appeal of the denial of their motion to dismiss. *Id.* at 187. The defendants' appeal was 'challenged' by the district court on the basis that it had not made a final decision on the immunity issue where it had simply denied the motion to dismiss as '*premature'* and '*without prejudice*.' *Id.*

The Third Circuit accepted the defendants' appeal and reversed, holding that: "*Denials of immunity are immediately appealable even if the denial is 'implicit.' When a district court refuses to rule on an immunity claim 'on the premise that the court is unable,...or prefers not to, determine the motion without discovery' then it is making 'at least an implicit decision that the complaint alleges a...claim on which relief can be granted.*" *Id.* at 187-88.

The Third Circuit found that "*the District Court made two errors when it deemed the* [defendants] *appeals improper. First, its order acts as an implicit denial of immunity – even though it was without prejudice – because it would require the* [defendants] *to bear the burdens of discovery and other pretrial matters.*" *Id*. at 188. "*Second, the legislator's immunity claims depend on questions of law and not factual disputes that would deprive us of jurisdiction.*" *Id.*

The Third Circuit examined the defendants undisputed conduct, the letters and admitted-to conversations, found them to be entitled to immunity and so "*reverse*[d] *the District Court's order denying Vogel and Sainato's motions to dismiss based on absolute and qualified immunity." Id.*, at 192.

Ortho-Tain respectfully requests that this Court enter an order finding the absolute litigation privilege to apply to the facts at bar, (2) reversing the District Court's Order and (3) directing the District Court to dismiss any and all claims in plaintiff's complaint predicated upon Ortho-Tain's 'spring of 2020' communications with Benco.

B.     There Is No Independent Basis for the
<u>District Court's Exercise of Jurisdiction</u>

The District Court's denial of Ortho-Tain's Rule 12(b)(1) motion to dismiss Vivos' claim for the Declaratory Judgment (Count 6) should also be reversed on the basis that Vivos never met its burden of establishing subject matter jurisdiction, through factual pleading, and where the District Court did not perform a proper analysis of the allegations in the Complaint or the documents attached to Ortho-Tain's motion to dismiss.

The burden of establishing subject matter jurisdiction is on the party asserting it. *See, Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). In *Mid-Contingent Cas. Co. v. Village of Deer Creek Homeowner's Ass'n, Inc.*, 685 F.3d 977, 980-81 (10th Cir. 2012) this Court stated that "*The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so. In determining whether to exercise their discretion, district courts should consider the following factors: [1] whether a declaratory*

action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective."[5]

The District Corut's Order denying Ortho-Tain's Rule 12(b)(1) Motion never examines or discusses any of the five factors detailed in *Mid-Contingent Cas. Co., supra.* Ortho-Tain submits that this was reversible error. *See, e.g.*, *McNickle v. Banker Life & Cas. Co.*, 888 F.2d 678, 680 (10th Cir. 1989) ("*A clear example of an abuse of discretion is where the trial court fails even to consider either an applicable legal standard or the facts upon which the exercise of its discretionary judgment is based.*"); *accord*, *Summers v. Utah*, 927 F.2d 1165, 1168 (10th Cir. 1991) ("*In failing to exercise its discretion, the district court perforce abused it.*")

A declaratory action in Colorado will not settle the controversy between Ortho-Tain and Vivos. Two of the documents tendered to the District Court below were the written contracts that Ortho-Tain had with Kirk Huntsman and Dr. Brian Kraft, each containing forum-selection clauses affixing the courts in Illinois with exclusive jurisdiction to resolve disputes arising under the agreement. Ortho-Tain tendered those contracts, along with its IL-Complaint, to the District Court of Colorado as evidence that Vivos' request for a

---

[5]These are commonly known as the "*Mhoon factors*" from this Court's opinion in the case of *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994).

Declaratory Judgment in this case was an inappropriate attempt to avoid the effect of those contract agreements. Doc.9-10; Aplt.App.127-141. The presence of such forum selection agreements was one reason cited by Judge Blakey in Illinois for denying Vivos' §1404 *Motion to Transfer* that action to Colorado. *See*, Doc.37 to 20cv04301.

The District Court's Order should be reversed on this front because there was already an alternative remedy, the litigation in Illinois, in which Vivos could defend itself against a claim that it had violated the Lanham Act.

The District Court's Order offers no discussion or explanation as to how a DJ action in Colorado could possibly clarify the legal relations between Ortho-Tain and the several others who acted in concert with Vivos in its marketing and sales' campaigns, including Benco, Dr. Kraft, Dr. Miraglia, Dr. Musso and Kirk Huntsman. None are parties to the Colorado litigation.

In this context, Ortho-Tain's motion to dismiss asserted that Vivos 'filed first' in Colorado for the purpose of procedural fencing, or to provide an arena for a race to *res judicata*, or simply to avoid the application of those contractual forum selection clauses. Vivos would have the District Court in Colorado declare Vivos innocent, based upon a hypothetical state of facts as proposed by Vivos. Yet it is Ortho-Tain who has been aggrieved by Vivos' re-labeling of before-during-after photographs. The photo-relabeler, Vivos, should not be permitted to dictate both the allegations against it and the forum for determining its liability.

C.     The District Court Erred in Refusing to Dismiss Counts 1-2 of the Amended
Complaint Due to Vivos' Failure to Comply With Fed.R.Civ.P.15(d)

The District Court erred in refusing to strike or dismiss the two new counts (1 and

2) of the amended complaint on the basis that they had been filed without prior leave of

court as required by Fed.R.Civ.P.15(d). This Court's review is *de novo. Esposito v. U.S.*,

368 F.3d 1271, 1275 (10th Cir. 2004) (observing that the appellate court "*reviews de novo*

*the district court's interpretation of the Federal Rules of Civil Procedure.*").

Fed.R.Civ.P.15(d) is entitled "*Supplemental Pleadings*" and states "*On motion and*

*reasonable notice, the court may, on just terms, permit a party to serve a supplemental*

*pleading setting out any transaction, occurrence, or event that happened after the date of*

*the pleading to be supplemented. The court may permit supplementation even though the*

*original pleading is defective in stating a claim or defense. The court may order that the*

*opposing party plead to the supplemental pleading within a specified time.*"[6]

In denying Ortho-Tain's motion on this front the District Court stated: "*The Court*

*is not convinced that the AC constitutes an unauthorized supplemental filing, as the Court*

*granted leave to amend and did not limit the claims and conduct Vivos was permitted to*

*include. Moreover, the new claims and allegations remain closely tied to the basis for the*

---

[6]D.C.Colo.LCivP 15.1(b), "*Amendment or Supplementation by Motion*" provides, in salient
part: "*A party who files an opposed motion for leave to amend or supplement a pleading*
*shall attach as an exhibit a copy of the proposed amended or supplemental pleading which*
*strikes through the text to be deleted and underlines the text to be added. Unless otherwise*
*ordered, the proposed amended or supplemental pleading shall not incorporate by*
*reference any part of the preceding pleading, including exhibits.*"

*initial Complaint, namely, Ortho-Tain's alleged contact with and statements to Vivos' business affiliates.*" Doc.86, at p.6.; Aplt.App. at 378-379.

Since Vivos had never filed a motion seeking leave under Rule 15(d) to file a supplemental pleading it follows that the District Court never had occasion to "authorize" the filing of a supplemental pleading. The District Court's original order was entered acting '*sua sponte'*, which is to say that there was never any 'motion' filed by Vivos seeking leave to file a supplemental pleading. Nor did the District Court's order ever gratuitously grant Vivos leave to add new claims based upon post-filing conduct. At most, the District Court had merely granted Vivos leave under Rule 15(a) to allow it to cure the defects existing with its original claims for defamation or interference with contract.[7]

The District Court's conclusion that the Amended Complaint's new Lanham Act and CCP claims are "*closely tied to the basis for the initial complaint'* is clearly erroneous. The basis for the original complaint was Ortho-Tain's 'spring of 2020' letter engagement with Benco, a corporate resident of Pennsylvania - not a Colorado consumer. Ortho-Tain's spring of 2020 communications were from counsel, to Benco's counsel, asserting legal claims against Benco. There was no effort to sell any Ortho-Tain products to Benco.

The procedural and substantive requirements of Rule 15(d) are not aspirational, but rather have the force of law. The jurisprudence informs that "*failing to request leave from*

---

[7]"*An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty as the **same cause of action originally pleaded** or attempted to be pleaded. It is a perfection of an original pleading rather than the establishment of a new cause of action.*" *Superior Manuf. Corp. v. Hessler Manuf. Co.*, 267 F.2d 302, 304 (10th Cir.1959).

*the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect.*" *USA, ex rel. Mathews v. HealthyCorp.*, 332 F.3d 293, 296 (5th Cir. 2003); *accord*, *Martinez v. Safeway Stores, Inc.*, 66 F.R.D. 446, 448  (N.D.Cal. 1975) (observing that "*it is implicit in Rule 15 that a plaintiff may amend his complaint only to add matters that would otherwise have been proper to include in the original complaint.*"); *Hall v. CIA*, 437 F.3d 94, 100 (D.C. Cir. 2006) (stating that Supplement Pleadings "*always require leave of the court.*"); and *Lystn, LLC v. FDA*, 2019 WL 6038072  at *2 (D.Colo. 2019) (observing that amended complaint sought relief that "*is not of the same character as the relief it seeks in its underlying complaint"* and striking same on the basis that the plaintiff had not filed a motion under Rule 15(d) seeking leave to plead the new theories of recovery).

The District Court's conclusion that Ortho-Tain's cited case authorities (above) were all 'distinguishable' should not be found well taken by this Court. Aplt.App. at 379. To the contrary, the case law cited in Ortho-Tain's motion to dismiss confirmed that leave under Rule 15(a) does not permit a party to also file a Supplemental Pleading and that a party's failure to comply with Rule 15(d) requires the court to treat the pleading as a nullity, to be stricken. Aplt.App. at 275-278; 318.

Ortho-Tain respectfully requests that this Court apply Rule 15(d) (and the Local Rule) as written and enter an order reversing and remanding with directions that the District Court strike and dismiss the FAC's two new, supplemental pleadings, Counts 1 and 2.

D.     The FAC is a "Shotgun Pleading" That Fails to Comply with Rules 8 and 10

The FAC's new Count 1, labeled '*False Advertising*' in violation of the Lanham Act, begins at ¶45 with the statement "*Vivos realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.*" Aplt.App. at p.189. Many of the 44 '*prior paragraphs*' incorporated into this new "Lanham Act" count involve the conduct of counsel for Ortho-Tain, in sending letters to Benco's counsel.

By taking a 'shotgun' approach to pleading, the FAC conflates the factual basis for its original claims for common law defamation or contract interference with its new statutory "false advertising' claims. This same approach to pleading is repeated and so made worse with each successive count.

For example, Count 2 begins at ¶67 and "*realleges and incorporates all prior paragraphs of this Amended Complaint as if alleged herein.*" Aplt.App. at p.198. Stated differently, Ortho-Tain's alleged-liability under the Colorado Consumer Protection Act is based, at least in part, on allegations that Ortho-Tain's counsel sent out letters to an attorney in Pennsylvania.

Count 3, for common law defamation, incorporates all the allegations of the statutory violations contained in Counts 1 and 2. And by the time the reader gets to Count 6 (¶119), where Vivos seeks a Declaration that it did *not* violate the Lanham Act, Vivos first realleges and incorporates "*all prior paragraphs of this Amended Complaint as if alleged herein*" - 118 paragraphs (and all 5 counts) that preceded it. *Id.* at p.212.

Ortho-Tain's Rule 12 Motion discussed the impermissibility of this form of 'shotgun' pleading at some length over three pages, while citing specifically to at least *five*

District of Colorado cases, along with jurisprudence from 11th Circuit declaring shotgun pleadings to violate Rule 8 and instructing defense counsel served with same to file a motion and seek dismissal. Aplt.App. at pp.279-281.

The District Court appears to have not considered any of this case law in as much as its Order denying Ortho-Tain motion to dismiss (Aplt.App. at 382), states:

> *The Court is unconvinced by Ortho-Tain's conclusory assertion that the AC violates Rule 8, and Ortho-Tain fails to set forth in a detailed manner how the AC is unclear. The Court is dubious of Ortho-Tain's contention that it was not on notice of the basis for Vivos claims against it prior to the filing of the AC, and finds that dismissal is not warranted on this basis. Further, Ortho-Tain fails to provide authority holding that the mere incorporation of prior allegations renders the AC a shotgun pleading, nor does it set forth in any level of detail how this relatively common pleading addition caused the AC to become incomprehensible. The Motion is therefore denied to the extent it seeks dismissal of the AC under Rule 8 and Rule 10."*

With all respect, Ortho-Tain's assertions were not conclusory, but rather were detailed and supported by citation to the specific paragraphs in the amended complaint that expressly incorporated all of the allegations that preceding it. The District Corut's conclusion that Ortho-Tain "*fails to provide authority holding that the mere incorporation of prior allegations renders the AC a shotgun pleading…*" is clearly erroneous. Ortho-Tain's motion to dismiss cited to numerous cases, from both the District of Colorado and elsewhere, which expressly criticized the practice of shotgun pleadings as both intolerable and even an obstruction of justice. Doc.45, at p.7-8; Aplt.App. at 279-280.

For example, Ortho-Tain's Motion cited to the case of *International Academy v. Mentz*, 2013 WL 212640 at *7 (D.Colo. 2013) in which Judge Arguello observed that "*This Court has strongly criticized such use of 'shotgun pleading,' by which a party pleads*

*several counts or causes of action, each of which incorporates by reference the entirety of its predecessors.* [citation omitted]. *As this Court noted, the 'shotgun pleader foists off one of the pleading lawyer's critical tasks – sifting a mountain of facts down to a handful of those that are relevant to a given claim – on to the reader. Id. Courts roundly decry shotgun pleadings as a subject of 'great dismay,' 'intolerable,' and 'in a very real sense… an obstruction of justice.*" (citing *Strategic Income Fund,* 305 F.3d 1293-1295-96 n.9, 10 (11th Cir. 2002).[8]

Ortho-Tain's motion quoted from the case of *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015), which both defined a 'shotgun pleading' and confirmed that they do not provide the required notice:

> *"Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings.* **The most common type -by a long shot- is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint**. *The next most common type, at least as far our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected with any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count*

---

[8] Ortho-Tain's Motion also cited to several other Colorado cases, including *Allbrandt v. BOA, N.A.*, 2015 WL 1186660 at *6 (D.Colo.2015) ("*This Court has strongly criticized such use of 'shotgun pleadings' by which a party pleads several counts or causes of action, each of which incorporates by reference the entirety of its predecessors*"); *G.H. Daniels v. Solis*, 2013 WL 5216453 at *3 (D.Colo.2013) ("*Moreover, the complaint uses shotgun pleadings, a tactic which this Court and others have strongly criticized.*"); *Metzler v. Ball*, 2019 WL 3767054 at *8 (D.Colo.2019) (characterizing 'shotgun complaint' as one '*which combines multiple theories of relief into a single claim.*"); and *Jones v. Lehmkuhl*, 2013 WL 6728951 at *24 (D.Colo. 2013) (striking 'shotgun' pleading and citing with approval to the observation in *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 801, 806 n.4 (11th Cir. 2010) that "*Shotgun pleadings impede the administration of the district court's civil dockets in countless ways.*") *See*, Aplt.App. at 280.

*each cause of action or claim for relief. Fourth, and finally, there is a relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants is responsible for which acts or omissions or which of the defendants the claim is brought against. **The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.**"* (emphasis supplied)

Ortho-Tain's Motion (Aplt.App. at 281) also cited to *Baylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) in which the Court stated: "*Defense attorneys, of course, are not helpless in the face of shotgun pleadings – even though, inexplicably, they often behave as though they are. A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer.*"

The notion that shotgun pleadings do not provide sufficient notice is not 'dubious' but rather black-letter law. This jurisprudence cited above was all brought to the District Court's attention but rejected in favor of a finding that Ortho-Tain had not, supposedly, offered any case authority at all in support of its position.

Ortho-Tain issued several settlement demand letters and a draft complaint at law to Benco before then suing it. Vivos original complaint claimed that such 'spring of 2020' conduct was defamatory. How could Ortho-Tain have possibly been on notice that the conduct alleged to be defamatory was also a basis for Vivos' new, supplemental claims that Ortho-Tain had violated the Lanham Act or a consumer protection statute in Colorado?

There is no evidence in the record to support the notion that Ortho-Tain was somehow on notice of the FAC's new claims prior to their filing. Vivos simply struck,

without warning, with a shotgun pleading that also alleged new *post-filing* conduct as a basis for liability.

## IV. Conclusion and Prayer for Relief

WHEREFORE, Ortho-Tain respectfully prays that this Court enter an Order reversing the District Court and directing the District Court on remand to enter an order dismissing, with prejudice, all counts of Vivos' Amended Complaint.

Respectfully submitted,
Neff Law Group PC
/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

## <u>Certificate of Compliance with Type-Volume Limit</u>

1.    This document complies with the type-volume limit of Fed.R.App.P.27.3(B)(3) because, excluding parts of the document exempted by Fed.R.App.P.32(f), if any, this document contains 10,213 words or 824 lines of text.

2.    This document complies with the typeface requirements of Fed.R.App.32(a)(5) and the type-style requirements of Fed.R.App.32(a)(6) because this document has been prepared in a proportionally spaced typeface (Windows) in 13-point font, *Times New Roman*.

Respectfully submitted,
/s/ Nathan I. Neff
Attorney for Appellant, Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com

## Certificate of Service

I, Nathan I. Neff, attorney for appellant, Ortho-Tain, Inc., certify that on April 29, 2024 I caused a true and correct copy of the foregoing *Brief of Appellant*, to be served and transmitted to all counsel of record using the CM/ECF system and/or via e-mail upon the following attorneys of record:

Mamie Ling                                          Michael Allen Gehret
Armstrong Teasdale LLP                    Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800    257 East 200 South, Suite 350
Denver, CO 80237                              Salt Lake City, UT 84111
(720) 200-0615                                    (801) 638-8945
Email: mling@atllp.com                     E-mail: mgehret@atllp.com
*Attorneys for Vivos*                          *Attorneys for Appellee Vivos*


Respectfully submitted,

/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com

**No. 24-1061**
**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| VIVOS THERAPEUTICS, INC., a corporation, | ) | |
| Plaintiff/Appellee | ) | Appeal from 20-cv-1634 |
| vs. | ) | USDC, Dist. of Colorado |
| ORTHO-TAIN, INC., a corporation, | ) | Hon. William J. Martinez |
| Defendant/Appellant | ) | |

**ATTACHMENTS TO APPELLANT'S BRIEF**

**Doc.86      Order Entered February 14, 2024**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-1634-WJM-JPO

VIVOS THERAPEUTICS, INC.,

      Plaintiff,

v.

ORTHO-TAIN, INC.,

      Defendant.

---

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS[1]

---

    This matter is before the Court on Defendant Ortho-Tain, Inc.'s ("Ortho-Tain")

Motion to Dismiss Plaintiff Vivos Therapeutics, Inc.'s ("Vivos") First Amended Complaint

("Motion") (ECF No. 45).  For the following reasons, the Motion is denied.

### I. BACKGROUND

    The following facts are taken from Vivos's Amended Complaint ("AC") and are

assumed true for the purpose of resolving the Motion.  *See Ridge at Red Hawk, L.L.C.*

*v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

---

[1] The Court issued an earlier version of this Order on September 3, 2021.  (ECF No. 58.)  Ortho-Tain appealed that Order.  (ECF No. 59.)  The Tenth Circuit held it had jurisdiction to consider Ortho-Tain's appeal with respect to its claim of the litigation privilege on an interlocutory basis.  (ECF No. 71 at 4.)  However, the Tenth Circuit declined to exercise pendant jurisdiction to review the Court's other non-final rulings.  (*Id.* at 9.)

    On the merits, the Tenth Circuit reversed and remanded the Court's ruling "[t]o the extent the denial of immunity turned on a question of law" and dismissed the appeal "[t]o the extent the denial of immunity turned on the factual inadequacy of the record . . . ."  (*Id.* at 10–11.)  The Court now reissues its Order with an amended analysis of Ortho-Tain's claim of the litigation privilege.  No other aspect of this Order has been altered from the one issued on September 3, 2021.

This action arises out of Ortho-Tain's alleged interference with Vivos's relationships with its clients.  (ECF No. 40.)  Vivos and Ortho-Tain are both manufacturers of dental equipment which market their products to dentists and dental offices.  (*Id.* ¶¶ 1–3.)

In the Spring of 2020, Ortho-Tain's Chief Executive Officer ("CEO") contacted Vivos's affiliate, Benco.  (*Id.* ¶¶ 21–24.)  Ortho-Tain stated that Benco was displaying Ortho-Tain marketing materials in a Vivos-sponsored course in violation of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*  (*Id.* ¶¶ 22–26.)

Vivos filed its initial Complaint on June 5, 2020, asserting claims for libel, slander, intentional interference with contractual relations, and declaratory judgment on Ortho-Tain's assertions of Lanham Act violations.  (ECF No. 1.)  Ortho-Tain filed a Motion to Dismiss in response.  (ECF No. 9.)

On February 2, 2021, the Court reviewed the Complaint *sua sponte* and dismissed it without prejudice for failure to comply with Federal Rule of Civil Procedure 8.  (ECF No. 39.)  The Court denied the Motion to Dismiss as moot and granted Vivos leave to amend its Complaint.  (*Id.*)

Vivos filed its AC on February 12, 2021, which is the operative complaint.  (ECF No. 40.)  Vivos asserts six claims: (1) false advertising in violation of the Lanham Act; (2) violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, *et seq.*; (3) libel *per se*; (4) slander *per se*; (5) intentional interference with contractual relations; and (6) declaratory judgment that Vivos did not violate the Lanham Act as Ortho-Tain allegedly communicated to Benco.  (*Id.* ¶¶ 45–128.)  Vivos's Lanham Act and CCPA claims are based on allegations that in late 2020—after the filing of the

2

initial Complaint—Ortho-Tain began sending advertisements to Vivos's dentist clients, asserting that Vivos's brand was inferior to Ortho-Tain's brand.  (*Id.* ¶¶ 45–78.)

Ortho-Tain filed its Motion on February 26, 2021, seeking dismissal of the AC in its entirety pursuant to Rules 12(b)(1) and 12(b)(6).  (ECF No. 45.)  Vivos responded on March 19, 2021, and Ortho-Tain replied on April 2, 2021.  (ECF Nos. 52 & 56.)

## II. LEGAL STANDARD

### A.   Rule 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *Id.*

### B.   Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-

pleaded factual allegations and view them in the light most favorable to the plaintiff."
*Ridge at Red Hawk*, 493 F.3d at 1177.  In ruling on such a motion, the dispositive
inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is
plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
(2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously
studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect
the interests of justice."  *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir.
2009) (internal quotation marks omitted).  "Thus, 'a well-pleaded complaint may proceed
even if it strikes a savvy judge that actual proof of those facts is improbable, and that a
recovery is very remote and unlikely.'"  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. ANALYSIS

Ortho-Tain seeks dismissal of the AC on several grounds.  Namely, Ortho-Tain
asserts that Vivos fails to state a claim for relief because it did not obtain leave to
amend to assert its Lanham Act and CCPA claims pursuant to Federal Rule of Civil
Procedure 15, that Ortho-Tain's statements are shielded by an absolute litigation
privilege, and that the Court lacks jurisdiction over Vivos's declaratory judgment claim.
(ECF No. 45.)  Ortho-Tain further contends that the Court should dismiss the AC for
failure to comply with Federal Rules of Civil Procedure 8 and 10.  (*Id.*)

### A.   Rule 15 Amendment

Ortho-Tain contends that Vivos impermissibly brought two additional claims—the
Lanham Act and CCPA claims—when given leave to amend.  (*Id.* at 3–7.)  Due to the
additional claims, which are based on certain conduct after the filing of the initial
Complaint, Ortho-Tain argues that the AC constitutes an unauthorized supplemental

filing.  (*Id.*)  Ortho-Tain distinguishes between leave to amend pursuant to Rule 15(a) and 15(d), asserting that Vivos was required to specifically seek leave to file such pleading pursuant to Rule 15(d).  (*Id.* at 3–5.)

When it dismissed the Complaint *sua sponte*, the Court granted Vivos leave to amend to cure pleading deficiencies but did not specify whether leave was granted pursuant to Rule 15(a) or 15(d).  (ECF No. 39.)  Further, Ortho-Tain's only case law from this District involves situations where plaintiffs filed amended pleadings without first obtaining any leave from the court to do so, and sometimes added numerous additional defendants and unrelated claims.  *See O'Connor v. Lafayette City Council*, 2020 WL 5203792, at *3 (D. Colo. Sept. 1, 2020) (striking amended complaint where court granted plaintiff leave to file only one amended complaint and plaintiff filed two additional amendments without leave); *Johnson v. Barnes*, 2020 WL 2059928, at *4 (D. Colo. Apr. 29, 2020) (denying leave to file supplemental pleading where court had already denied numerous motions to amend to include certain events unrelated to the action); *Lystn, LLC v. Food & Drug Admin.*, 2019 WL 6038072, at *2 (D. Colo. Nov. 14, 2019) (denying motion for preliminary injunction based on requested relief unrelated to underlying complaint and acknowledging that plaintiff did not avail itself of liberal pleading rules nor filed a motion under Rule 15(d)).  This authority is distinguishable in that the Court here did specifically grant Vivos leave to file an amended complaint; thus, Vivos did not unilaterally file an amended pleading unrelated to the initial complaint and without permission.

The Court is not convinced that the AC constitutes an unauthorized supplemental filing, as the Court granted leave to amend and did not limit the claims and conduct

Vivos was permitted to include. (ECF No. 39.) Moreover, the new claims and allegations remain closely tied to the basis for the initial Complaint, namely, Ortho-Tain's alleged contact with and statements to Vivos's business affiliates. (ECF Nos. 1 & 40.) The Court therefore denies the Motion to the extent it seeks dismissal of the AC based on Rule 15.

## B.   Litigation Privilege

Ortho-Tain asserts that its statements to Benco[2] are subject to an absolute privilege given that they were made during or in anticipation of litigation. (ECF No. 45.) Thus, it argues, its statements do not give rise to liability for defamation or interference with contractual relations. (*Id.*)

Vivos asserts that the litigation privilege is not absolute as to statements made prior to litigation and does not shield non-attorney parties, such as Ortho-Tain's CEO. (ECF No. 52 at 5–9.) Vivos further argues that even Ortho-Tain's attorney's statements were not privileged because they were not necessarily made in anticipation of litigation. (*Id.* at 6–9.)

Colorado has adopted the Restatement (Second) of Torts, which provides that an attorney is absolutely privileged to publish defamatory matter "in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel." Restatement (Second) of Torts § 586. And as the Tenth Circuit explained on appeal of the Court's earlier order, the privilege is also afforded to parties, such as Ortho-Tain, "if

---

[2] Specifically, Vivos alleges that Ortho-Tain contacted Benco based on its belief that a Benco-sponsored Vivos course had displayed Ortho-Tain's marketing materials in violation of the Lanham Act. (ECF No. 40 ¶¶ 20–26.)

the [defamatory communication] has some relation to the proceeding." (*Id.* § 587; ECF No. 71 at 6–7. The requirement of "some relation to the proceeding" is minimal. *See* Restatement (Second) of Torts § 587 cmt. c ("It is not necessary that the defamatory matter be relevant or material to any issue before the court. It is enough that it have some reference to the subject of the inquiry.").

The Court previously described the litigation privilege as "qualified even as to attorneys." (ECF No. 58 at 7.) Quoting comment e to § 586, the Court explained that the future legal proceeding must be "contemplated in good faith and under consideration" and that the "bare possibility that the proceeding might be instituted" is insufficient for the privilege to attach." (*Id.*) There is a nearly identical comment to § 587. *Compare* Restatement (Second) of Torts § 586 cmt. e, *with id.* § 587 cmt. e. These limitations, however, do not transform the litigation privilege into a "qualified" one. The litigation privilege is, as Ortho-Tain argues, "absolute," *id.* §§ 586–67, because it is "based upon the personal position or status of the actor" rather than "aris[ing] out of the particular occasion upon which the defamation is published." Restatement (Second) of Torts, Introductory Note to Chapter 25.

Even under the correct standard, however, the result does not change. Given that this action is at the pleading stage, and that the Court must construe the allegations in the light most favorable to Vivos, the Court declines to delve into the factfinding endeavor of whether the communications in spring of 2020 were made in good faith contemplation of litigation.[3] Finding that Ortho-Tain has failed to set forth a convincing

---

[3] Even at the summary judgment stage, courts have opted not to grant the qualified privilege as to pre-litigation conduct. *See, e.g.*, *Laffer v. Levinson, Miller, Jacobs & Phillips*, 40 Cal. Rptr. 2d 233, 238 (Cal. App. 1995) (denying summary judgment on defamation claim based on pre-

basis for dismissal on this ground, the Motion is denied to the extent it seeks dismissal of the defamation and intentional interference with contractual relations claims based on litigation privilege.

## C.   Declaratory Judgment

Ortho-Tain argues that the Court lacks jurisdiction over Vivos's declaratory judgment claim because Ortho-Tain has filed a pending action in Illinois state court; it asserts that the declaratory judgment claim in this case constitutes an anticipatory filing seeking a determination of liability prior to the resolution of the Illinois action.  (ECF No. 45 at 15.)

Vivos argues that Courts routinely permit declaratory judgment claims seeking to disprove alleged Lanham Act violations.  (ECF No. 56 at 9–10; *see also Amazon.com, Inc. v. Nat'l Ass'n of College Stores, Inc.*, 826 F. Supp. 2d 1242, 1248–51 (W.D. Wash. 2011); *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 377 (S.D.N.Y. 2007).)  Vivos contends that Ortho-Tain relies solely on a single out-of-circuit case dismissing a negligence action which it determined to be an anticipatory filing meant to establish liability prior to the resolution of another action.  (ECF No. 56 at 9; *see also Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167–68 (7th Cir. 1969).)

As Vivos notes, courts have allowed similar actions to proceed and have not dismissed those actions on the basis that those suits constituted anticipatory filings. *See Amazon.com*, 826 F. Supp. 2d at 1248–51; *Russian Standard Vodka*, 523 F. Supp. 2d at 377.  Ortho-Tain's single case supporting a contrary result does not involve the

---

litigation conduct because issues of fact existed as to defendants' "good faith serious contemplation of future litigation").

same area of law and is not binding in this Circuit or on this Court.[4]  *See Cunningham Bros.*, 407 F.2d at 1167–68.  Accordingly, the Court will deny the Motion to the extent that it seeks dismissal of the declaratory judgment claim.

## D.     Remaining Bases for Dismissal

Finally, Ortho-Tain contends that the AC violates Rule 8 because it fails to set forth the basis for relief with sufficient specificity and violates Rule 10 because it is a "shotgun pleading."  (ECF No. 45.)  Ortho-Tain asserts in two sentences that the AC "fails to provide sufficient factual detail, the *who, what, when, where* and *how* as necessary to satisfy Rule 8."  (*Id.* at 15 (emphasis in original).)  Ortho-Tain further asserts that the AC violates Rule 10 because each claim realleges and incorporates by reference the preceding paragraphs.[5]  (*Id.* at 7–9.)

The Court is unconvinced by Ortho-Tain's conclusory assertion that the AC violates Rule 8, and Ortho-Tain fails to set forth in a detailed manner how the AC is unclear.  The Court is dubious of Ortho-Tain's contention that it was not on notice of the basis for Vivos's claims against it prior to the filing of the AC, and finds that dismissal is not warranted on this basis.[6]  Further, Ortho-Tain fails to provide authority holding that the mere incorporation of prior allegations renders the AC a shotgun pleading, nor does it set forth in any level of detail how this relatively common pleading addition caused the

---

[4] Notably, Ortho-Tain fails to even address this argument in its reply.  (*See generally* ECF No. 56.)
[5] Specifically, Ortho-Tain contends that "by the time the reader gets to Count 6 the purported claim incorporates all 118 paragraphs of the Complaint that preceded it, thereby amounting to am amalgamation of all counts in the [C]omplaint."  (ECF No. 45 at 7.)
[6] To the extent that Ortho-Tain suggests that the increased length of the AC suggests violation of Rule 8 (ECF No. 45 at 1), the Court ordered Vivos to amend to set forth specific factual bases for each Count, which necessarily resulted in the increased length.  (ECF No. 39.)

AC to become incomprehensible.  The Motion is therefore denied to the extent it seeks

dismissal of the AC under of Rule 8 and Rule 10.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.   Ortho-Tain's Motion (ECF No. 45) is DENIED; and

2.   No later than **February 16, 2024**, the parties shall jointly contact the chambers of

Magistrate Judge James O'Hara to schedule a Status Conference or such other

proceeding as Judge O'Hara deems appropriate to move this litigation forward.

Dated this 14th day of February, 2024.

BY THE COURT:

William J. Martínez
Senior United States District Judge