**No. 24-1061**
**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| VIVOS THERAPEUTICS, INC., a corporation, | ) | |
| Plaintiff/Appellee | ) | Appeal from 20-cv-1634 |
| vs. | ) | USDC, Dist. of Colorado |
| ORTHO-TAIN, INC., a corporation, | ) | Hon. William J. Martinez |
| Defendant/Appellant | ) | |

**REPLY BRIEF OF APPELLANT**

Oral argument is not requested.

Nathan I. Neff
Neff Law Group, P.C.
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

**Table of Contents**

I.      This Court Enjoys Appellate Jurisdiction Under 28 U.S.C. §1291          4

II.     The *Response* Misstates and Mischaracterizes the District Court's Order      5

III.    The Litigation Privilege is Absolute – Not Qualified          10

IV.     Motive or Intent are Not Elements of the Absolute Litigation Privilege Defense     11

V.      There are No Factual Disputes Regarding the Spring of 2020 Communications      13

VI.     This Court Can Determine the Legal Issue Presented          15

VII.    The Forum Selection Clauses Are Material to the *Mhoon* Factors          16

VIII.   Ortho-Tain Does Not Seek a "Second" Review of Prior Ruling          18

IX.     Vivos Bears The Burden of Compliance with Rule 15(d)          19

X.      Conclusion and Prayer for Relief          20

**Table of Authorities**                                               **Page**

*Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir. 1991)          4

*Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989)    4, 16

*Sriberg v. Raymond*, 544 F.2d 15 (1st Cir. 1976)                        5, 11

Restatement of Torts (2nd) at §586-588                                   10

*Thompson v. Frank*, 313 Ill.App.3d 661, 664, 730 N.E.2d 143 (2000)      12

*Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa.Sup.Ct. 1991)                 12

*Buckner v. Gilliland*, 507 F.App'x 522, 524 (6th Cir. 2012)            12

*In re Ford*, 492 F.3d 1148 (10th Cir. 2017)                             12

*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381 (10th Cir. 1997)  13

*Hunter v. Bryant*, 502 U.S. 224, 227 (1991)                            14

*Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991)                        14

*Walters v. Linhof*, 559 F.Supp.1231 (D.Colo. 1983).                    15

*HIRA Educational Services N.A. v. Augustine*, 991 F.3d 180 (3rd Cir. 2021)  15

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994)     16

*Summers v. Utah*, 927 F.2d 1165 (10th Cir. 1991)                       18

*Weiland v. Palm Beach Co. Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015)  18

Fed.R.Civ.P.15(d)                                                        20

*Northern Natural Gas Co. v. L.D. Drilling, Inc.*, 2009 WL 10689006 (D.Kan. 2009)  20

**I.    This Court Enjoys Appellate Jurisdiction Under 28 U.S.C. §1291.**

Appellate review from a district court's order denying a motion to dismiss asserting an absolute immunity/litigation privilege defense was allowed in *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369, 1369-70 (10th Cir. 1991) where it was stated "*Defendant-appellant Herzfeld & Rubin, P.C. (H&R) appeals from an interlocutory order of the district court denying a motion to dismiss and a motion for summary judgment filed by itself and defendant Volkswagenwerk AG.*" "*Normally, our jurisdiction under 28 U.S.C. §1291 extends only to final orders. Appellant H&R correctly maintains that we have jurisdiction based on the collateral order doctrine as applied to a denial of absolute immunity.*" *Id.* at 1370. Similarly, in *Valdez v. City and County of Denver*, 878 F.2d 1285, 1287 (10th Cir. 1989) this Court observed "*Our jurisdiction to review the denial of an absolute immunity claim arises under the 'collateral order' doctrine'.*"

The jurisdictional issue in this appeal is the same as before: whether the District Court's denial of an absolute immunity defense, asserted in a motion to dismiss, is appealable under 28 U.S.C. §1291. That question has been answered in the affirmative by this Court time and again, including in the first appeal in this case. Vivos' *Response* spans several pages (3-4) advancing the proposition that non-final orders are never appealable – but without ever engaging in any discussion of the collateral order doctrine or this Court's precedents in *Robinson, supra,* and in the first appeal in this case, applying the doctrine to permit an appellate review of a non-final order denying an absolute immunity defense pursuant to §1291. The law is well settled and this Court should, again, accept jurisdiction under the collateral order doctrine and 28 U.S.C. §1291.

## II. The *Response* Misstates and Mischaracterizes the District Court's Order

The *Response* brief is plagued by misstatements and mischaracterizations of the dismissal order from which appeal is taken so as to create a false premise for the arguments and authorities it thereafter asserts.

For example, the *Response* at page 5 states that the first issue presented is "*Whether the District Court properly denied Ortho-Tain's Motion to Dismiss **by ruling that the qualified 'privilege to defame' during litigation did not apply** to Ortho-Tain's counsel's statements from the facts alleged at the pleading stage.*"[1]

To 'rule' that the privilege did *not* apply to counsel's statements would have first required the Court to perform a proper analysis of the record before it and then *find* that Ms. Stevens and Ortho-Tain's counsel's communications to Benco's counsel were *not* made to a proposed defendant, with relation to a proposed suit. *See, Sriberg v. Raymond*, 544 F.2d 15, 16 (1st Cir. 1976) ("*The privilege attaches to a communication, made to a proposed defendant, with relation to a proposed suit.*").

Ms. Stevens' letter to Benco discussed specific acts by Benco to plan, sponsor, promote and profit from a marketing production that showcased relabeled photographs of Ortho-Tain's cases. Ms. Stevens letter, and those of Ortho-Tain's counsel that followed, advocated Ortho-Tain's belief, supported by a plethora of case law, that the Benco-sponsored "Vivos System" marketing campaign was an *unlawful* attempt to misappropriate

---

[1] *See also Response* at page 18: "*The first issue – whether the District Court properly denied Ortho-Tain's Motion to Dismiss **by ruling that the qualified 'privilege to defame' during litigation did not apply to Ortho-Tain's counsel's statements** from the facts alleged at the pleading stage – deals with the District Court's interpretation of law.*" (emphasis supplied).

or profit from the talents and workmanship of Ortho-Tain, resulting in legal injury. The very same factual and legal contentions were then set forth in a draft complaint sent to Benco and then in the Complaint filed in Illinois, naming Benco as a party defendant.

The District Court did not examine that record and then *find* that the factual circumstances did not permit application of the absolute litigation privilege. Declining to perform a proper analysis is not the same thing as performing a proper analysis and then making findings of fact and a ruling, as a matter of law, that the privilege does *not* apply.

The *Response* hedges its position, however, just one page later (p.6), in the section labeled "*Introduction*", where it advances a different interpretation of the District Court's decision: "*The District Court re-evaluated the privilege issue using that standard, but still denied Ortho-Tain's motion to dismiss, **finding that additional factfinding was necessary before making a privilege determination**.*"

This particular assertion notably contradicts Vivos' earlier assertion, at page 5, that the District Court *had* found - ruled - that the privilege did *not* apply to the facts presented to the Court in the parties' pleadings. The facts presented by the parties' pleadings included statements made in Ms. Stevens letter to Benco, Ortho-Tain's counsel's follow-up letters to Benco's General Counsel and their attachment, including photographs, oral appliance records and a draft complaint, as well as a file-stamped Complaint from Illinois with two exhibits, each a contract with Dr. Kraft and Mr. Huntsman, containing forum selection clauses affixing Illinois as the parties' agreed to jurisdictional forum for litigating disputes.

In the first appeal in this case this Court reversed and remanded and directed the District Court to analyze '*all*' of those Spring of 2020 and then to make inquiries:

"*Accordingly, because the privilege can apply to attorneys and parties alike, the district court should have analyzed **all** of the Spring 2020 Communications, including Stevens' letters and Neff's follow-up communications, together. Under that analysis, the relevant inquiry is whether OT's Spring 2020 Communications related to the Northern District of Illinois litigation and whether that litigation was contemplated in good faith. We thus remand to the district court for proper analysis.*" (emphasis supplied) Aplt.App.at 365.

A proper analysis of the factual circumstances necessarily precedes a valid ruling on a legal issue. The District Court never 'found' that it needed more facts in order to make a determination on an issue of law; rather it simply declined to perform the proper analysis of the facts in the record before it. If the District Court had performed the proper analysis of '*all of the Spring of 2020 Communications"* then its dismissal Order would have indicated that it *had* evaluated Ms. Stevens and OT-counsel's letters/e-mails to Benco with Ortho-Tain's filed Complaint in Illinois and then found them to be *un*related.

Ms. Stevens' letter informed of Ortho-Tain's position that Dr. Kraft had acted as an agent of Vivos in a Benco-promoted-and-sponsored, "Vivos System" presentation in which Dr. Kraft displayed re-labeled photographs to falsely imply that Vivos was the source or origin of the oral appliance goods used to achieve the showcased results. Ortho-Tain's Complaint in Illinois says the exact same thing in suing Benco, Vivos and Dr. Kraft.

The District Court never evaluated Ortho-Tain's Complaint filed in Illinois to see if it relates to the Spring of 2020 Communications. The dismissal order from which appeal is taken never references a single allegation from Ortho-Tain's Complaint in Illinois. And since the dismissal order offers no evaluation of Ortho-Tain's filed Complaint in Illinois it

certainly could never have 'found' Ortho-Tain's lawsuit against Benco, Vivos and Dr. Kraft to lack a good faith basis in law or fact.

It follows, then, that Ortho-Tain meant what it said when communicating with Benco in the Spring of 2020: "*Enclosed please find a draft Complaint at Law which Ortho-Tain intends to file in the absence of a conversation with a managing member of the Cohen family by this Friday at noon.*" Aplt.App.00060-75; Letter Neff to Bisal dated June 1, 2020 and attaching draft complaint at law. This same letter was attached as an exhibit (Doc.40-3) to Vivos' Amended Complaint. Aplt.App.000227. It is simply not possible for the District Court to have performed a proper analysis of 'all' of the 'Spring of 2020 Communications' and then 'found' that they had no relationship with a lawsuit then contemplated in good faith.

Second, the District Court's dismissal order never makes a 'finding' that "***additional factfinding was necessary before making a privilege determination***" as claimed in the *Response* at page 6. It is not as if the District Court was without a sufficient record necessary to make that determination or without a mandate from this Court to analyze 'all' of the 'Spring of 2020 Communications' and their attachments, along with Ortho-Tain's filed Complaint. Doc.9-1 to 9-10; Aplt.App.00036-141; Doc.56- to 56-2; Aplt.App.000320-349; and Doc.40-1 to 40-4; Aplt.App.000218-232.

Third, the *Response* at page 15, invents a 'holding' out of thin air, in stating:

"*With respect to counsel's statements, the District Court recognized the second limitation of the qualified privilege – that the communication related to a proceeding that is contemplated in good faith and under serious consideration – **and held that the Amended Complaint sufficiently alleged Ortho-Tain's bad faith**, declining to delve deeper into this 'fact finding endeavor' at the pleading stage.*"

The District Court never 'held' or "found" that the Vivos-Complaint had alleged "*bad faith*" conduct by Ortho-Tain because none of the causes of action alleged by Vivos require, as an element of the claim, proof of 'bad faith' conduct by Ortho-Tain. Moreover, even if the Amended Complaint had alleged 'bad faith' – such would be a legal conclusion of the pleader – which is not accepted as "true" under the standard of decision.

Vivos has already had a chance to allege bad faith – by filing a motion and seeking relief under Rule 11 in response to Ortho-Tain's lawsuit in Illinois. It did not for a reason: Vivos knows that that the legal claims asserted in Ortho-Tains' IL-Complaint are all well-grounded in fact and law.

Had the District Court performed the proper analysis then it would have confirmed that less than two years before Dr. Kraft's February, 2020 presentation for Vivos, Dr. Kraft had signed a written contract agreement with Ortho-Tain that contained a two-year non-compete provision. Aplt.App.000128-135; non-compete provision at ¶9; *Id*. at 000131. This contract agreement was referenced in Ms. Stevens' letter to Benco, provided to counsel for Benco by counsel for Ortho-Tain in follow-up communications (as evidence of Ortho-Tain's good faith basis) and then attached an exhibit to Ortho-Tain's breach of contract suit against Dr. Kraft in the Illinois Complaint.

If the District Court below had performed the proper analysis then it would have also evaluated the written non-disclosure agreement (NDA) between Ortho-Tain and Vivos' founder, Kirk Huntsman, who is also sued as a party defendant in Ortho-Tain's complaint in Illinois for, *inter alia*, breaching that NDA. Aplt.App.000137-141.

Had the District Court performed the proper analysis then it would have seen for itself that the very same pediatric cases showcased by Dr. Kraft as Vivos success stories (Aplt.App.000340-349) had, in fact, all achieved their favorable outcomes following treatment with Ortho-Tain's oral appliance products. Aplt.App.000320-339.

These materials were provided to Benco, as evidence of Ortho-Tain's good-faith basis for its claims of legal-injury, so as to persuade Benco to choose cooperation and settlement rather than well-founded litigation. One of the policy goals of the absolute litigation privilege, both before and after suit has been filed, is to encourage parties and their counsel to speak freely so that disputes may be resolved by mutual agreement and settlement. Vivos seeks a decision from this Court that would undermine that public policy.

## III.    The Litigation Privilege is Absolute – Not Qualified

The *Response* repeatedly claims that the absolute litigation privilege set forth in the Restatement of Torts, §586-588, as adopted by Colorado (and 47 other states) is not 'absolute' but rather is 'qualified.' *See, e.g. Response* at page 5 ("*qualified privilege to defame*"), page 9 ('*litigation privilege applicable to pre-litigation conduct is qualified, not absolute*"), page 13 ('*qualified nature of the litigation privilege*') page 15 ('*qualified privilege*') page 18 ('*qualified privilege to defame*') page 21 ('*within the scope of the qualified privilege Ortho-Tain asserts*").

Ortho-Tain has not asserted a qualified privilege, but rather an absolute privilege defense, based upon the widespread adoption of the Restatement of Torts, §586-588, which informs that attorneys, parties and witnesses are all absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed

judicial proceeding and in relation thereto. Vivos' misunderstanding of the absolute nature of the privilege infects the entire *Response* and should not be credited by this Court.

## IV. Motive or Intent are Not Elements of the Absolute Litigation Privilege Defense

Vivos' *Response*, at page 21, states that the "*District Court **properly concluded that the question of Ortho-Tain's intent** while sending its disparaging communications was a 'factfinding endeavor', implicating an issue not appropriate for resolution on a motion to dismiss.*" This assertion highlights Vivos' misunderstanding of the absolute litigation privilege and/or of the District Court's role in evaluating the applicability of the privilege. There is no 'question of Ortho-Tain's intent' to be answered because the application of the absolute litigation privilege does not depend upon whether the publication of defamatory matter was intentional or accidental; rather application depends on the circumstances of the publication; namely, whether the statements were made by a party (or counsel for same) to a proposed or actual defendant and in relation to a proposed or actual judicial proceeding.

Vivos' focus on the 'question of intent' of the speaker misses the point. Even maliciously-issued statements may be absolutely privileged under §586. *See, Sriberg v. Raymond*, 544 F.2d 15, 16 (1st Cir. 1976) (holding pre-suit communications from counsel to a prospective defendant to be absolutely privileged and stating: "*The privilege attaches to a communication, made to a proposed defendant, with relation to a proposed suit. It is true that the escrow agent would be named as a defendant in the suit. However, it would only be a stakeholder. Plaintiff's contention is that the substance of the letter, as distinguished from mere notification that suit was intended, bore no relation to a claim against the escrow, **so that sending it to the escrow was evidence of malice**. We would put*

11

*it differently, because malice is normally spoken of as destroying a privilege, notably a conditional privilege, which this one is not.*").

All of the 'Spring of 2020 Communications' were sent from either Ms. Stevens or Ortho-Tain's counsel, situated in Illinois, to Benco and its counsel, situated in Pennsylvania. The settled law in both states informs that the motive of speaker is irrelevant to the application of the absolute litigation privilege. *See, c.f., Thompson v. Frank*, 313 Ill.App.3d 661, 664, 730 N.E.2d 143 (2000) ("*An absolute privilege provides a complete bar to a claim for defamation, **regardless of the defendant's motive** or the unreasonableness of his or her conduct.*"); and *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa.Sup.Ct. 1991) ("*Importantly, **the existence of the privilege does not depend upon the motive of the defendant** in making the allegedly defamatory statement. The privilege is absolute and cannot be destroyed by abuse.*".) (emphasis supplied)[2]

There is no need for 'further discovery' to flesh out Ortho-Tain's 'intent' or to ascertain if Ms. Stevens or retained counsel were motivated by something other than a desire to vigorously advocate a legal claim when engaging Benco and its counsel.

---

[2]This case law is offered in contrast to that offered in the *Response,* at pages 26-27, such as *Buckner v. Gilliland*, 507 F.App'x 522, 524 (6th Cir. 2012), *In re Ford*, 492 F.3d 1148 (10th Cir. 2017) and the like. *Buckner* addressed the propriety of statutory/Parker-action immunity doctrine, based upon the speaker's status as a government employee; it did not address an absolute litigation privilege defense under Restatement of Torts, §586-588. *Ford* stands for the proposition that where the defendants 'motive' and 'intent' are elements of the cause of action, then allegations of 'bad faith' may be resolved as 'questions of fact'. Ortho-Tain has no quarrel with those propositions as applied to those cases; however, neither case holds that the propriety of the absolute litigation privilege is somehow dependent upon the motive of the party or counsel making the statements.

**V. There are No Factual Disputes Regarding the Spring of 2020 Communications.**

Vivos' *Response*, at page 21, claims that the District Court concluded that the analysis of whether a privilege applied "*involved necessary fact findings, and as a result, it would not resolve the fact disputes on a motion to dismiss. As such , the District Court denied Ortho-Tain's Motion to Dismiss based on absolute immunity.*" (emphasis supplied).

This is yet another invented 'holding' or 'finding' – because there are no "factual disputes" to resolve regarding the 'Spring of 2020 Communications.' Vivos original complaint offered only vague and conclusory allegations, without exhibit support, to the effect that in the Spring of 2020 Ortho-Tain, through agents, had made defamatory statements to a business affiliate, Benco. Ortho-Tain was familiar with its 'Spring of 2020 Communications" with Benco and promptly disclosed them to the Court, as exhibits to Ortho-Tain's Rule 12 Motion, so as to assist the Court in determining, at the earliest stage possible, the preliminary issue of law presented by the absolute litigation privilege defense.

Ortho-Tain's doing so was consistent with this Court's instruction in *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997), which informs that: "*if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.*" Vivos has never 'disputed' the authenticity of the 'Spring of 2020 Communications' tendered by Ortho-Tain. In fact, Vivos adopted several of them as attached exhibits to the Amended Complaint. *See*, Doc.40-1 to 40-4; Aplt.App.00217-232.

There is no 'factual dispute' to be resolved. The legal issue was ripe and with an adequate record for making the preliminary determination by not later than July of 2020. Ortho-Tain has been put through four years of litigation over statements it made in pre-suit letters to a prospective defendant, Benco, in relation to legal claims that Ortho-Tain thereafter asserted against Benco in a Complaint at Law.

The *Response* variously claims that the District Court (p.25) "*determined that **it was too early** to engage in factfinding to determine whether the privilege applied*" and/or (p.26) that it "*concluded that it could not determine at the pleadings stage whether pre-litigation statements of Ortho-Tain's lawyer were immune from suit.*"

This is surely perplexing because in remanding this case previously this Court did not state that it was 'too early' for the District Court to engage in fact finding. This Court did not state that the legal question of whether the absolute litigation privilege applies is something that a district court may decline to answer until after the defendant has first been put through the time and expense of discovery.

This Court's directive was to analyze the facts and circumstances and then determine the legal issue, at the onset of the litigation and consistent with the string of Supreme Court cases that have repeatedly "*stressed the importance of resolving immunity questions at the earliest possible stage in litigation*" (*Hunter v. Bryant*, 502 U.S. 224, 227 (1991) and without forcing the defendant to first engage in costly discovery. *See*, *Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991) ("*Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation*

*to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.*").

Respectfully, it was not 'too early' for the District Court, upon remand, to comply with this Court's directive and perform the proper analysis of the facts and circumstances presented in the undisputed record before it.

## VI. This Court Can Determine the Legal Issue Presented.

Vivos' *Response*, at page 29, asserts that "*Ortho-Tain has not provided any legal justification which would allow this Court to undertake a detailed factual finding on the absolute-immunity issue.*" To the contrary, Ortho-Tain has provided both legal justification for appellate determination and two case law examples of it in the context of the application of the absolute immunity doctrine.

The legal justification for such a review is because the factual record is substantial and not in dispute and because "*it is a preliminary question of law for the court to determine whether the circumstances give rise to a privilege.*" *Walters v. Linhof*, 559 F.Supp.1231 (D.Colo. 1983). And Ortho-Tain's primary brief, at page 32-33 cited and discussed the decisions in *HIRA Educational Services North America v. Augustine*, 991 F.3d 180 (3rd Cir. 2021) and *Valdez v. City and County of Denver*, 878 F.2d 1285, 1290 (10th Cir. 1989) ("*Because the record viewed as a whole indicates that every action taken by the defendants Herrera and MacFarlane to which Valdez objects was taken under the direction of a state court judge, the judgement of the district court is reversed and this cause remanded with instructions to dismiss the complaint as to Herrera and MacFarlane in their individual*

*capacities on the basis of absolute immunity.*") Ortho-Tain respectfully requests that this Court enter an order, as it did in *Valdez*, reversing the district court and remanding the cause with instructions to dismiss the complaint on the basis of absolute immunity.

## VII.  The Forum Selection Clauses Are Material to the *Mhoon* Factors.[3]

Vivos' Response, at page 37, stakes out the position that the presence of forum-selection provisions in contracts attached to Ortho-Tain's IL-Complaint, and tendered to the District Court below (as Doc.9-10; Aplt.App.128-141) are "*irrelevant to this litigation*". Vivos could not be more wrong.

Ortho-Tain engaged both Vivos and Benco in pre-suit settlement discussions. Vivos knew that, absent settlement, Ortho-Tain would file suit; and so Vivos struck first with a lawsuit filed on June 5, 2020, just three days before Ortho-Tain's final settlement conference with Benco and its counsel. Aplt.App.00089-91.

Two of *Mahoon* factors include (a) whether the DJ action would settle the controversy and (b) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata*. The forum selection clauses in the contracts attached to Ortho-Tain's Rule 12 Motion are relevant to both.

As a corporation, Vivos' liability arises from the acts or omissions of its actors, in this case Vivos' founder/CEO, Kirk Huntsman, and Vivos' marketing-course presenters, Dr. Kraft and Dr. Miraglia. Mr. Huntsman and Dr. Kraft are both are signatories to written

---

[3] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994)

contracts containing forum selection clauses requiring disputes arising under those agreements to be litigated by the courts in Illinois.

Ortho-Tain's complaint in Illinois alleges that Dr. Kraft breached his agreement when he served as a presenting agent for Vivos in February of 2020. Dr. Kraft's liability under the contract arises from his conduct as agent for another/Vivos and must be decided by the courts in Illinois. Similarly, Mr. Huntsman's contract with Ortho-Tain acknowledges an agreement to disclose certain proprietary and confidential information in exchange for Mr. Huntsman's promise not to use such information for the benefit of anyone other than Ortho-Tain. Ortho-Tain's IL-Complaint alleges that Mr. Huntsman breached the NDA and converted Ortho-Tain's property (its pediatric case study photographs, among other items), for the benefit of Mr. Huntsman then-new company, Vivos.

Neither Dr. Kraft nor Mr. Huntsman are parties to this litigation in Colorado, but both are parties to the litigation in Illinois. The District Court in Illinois cited the presence of contractual forum selection clause as one basis for denying Vivos' §1404 motion to transfer the case to Colorado. Both of these contracts were brought to the attention of the District Court in Colorado in support of Ortho-Tain's argument that Vivos had filed suit in Colorado in an effort to avoid the legal effect of such contract agreements. There is alternative remedy, in Illinois with all relevant parties, which is better and more effective.

The order from which appeal is taken is completely silent on the *Mahoon* factors and the forum selection clauses presented with the Rule 12 Motion. The District Court's failure to consider such evidence is an abuse of its discretion. *See*, *Summers v. Utah*, 927

F.2d 1165, 1168 (10th Cir. 1991) ("*In failing to exercise its discretion, the district court perforce abused it.*")

## VIII.  Ortho-Tain Does Not Seek a "Second" Review of Prior Ruling.

Vivos' Response, at page 37, argues that Ortho-Tain is seeking a second review of the District Court's decision denying Ortho-Tain's motion to dismiss based upon an alleged failure to comply with Rules 8 and 10. Ortho-Tain is not.

Following remand the District Court entered a *new* dismissal order which concluded that Ortho-Tain had '*failed to provide authority holding that the mere incorporation of prior allegations renders the ACT a shotgun pleading*'. That charge is clearly erroneous. Ortho-Tain's Rule 12 Motion cited to numerous cases from the District Court of Colorado and the 11th Circuit Court of Appeals uniformly holding that the incorporation of all prior allegations renders the Complaint a 'shotgun pleading' – which *never* provides the required notice: "*The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests*." *Weiland v. Palm Beach Co. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015).

The District Court rationalized that Ortho-Tain's Rule 12 Motion should fail for lack of case law support. Prior to the first appeal the District Court had made a similar claim, but to the effect that Ortho-Tain had failed to provide authority for the proposition that the absolute litigation privilege extended a party or witness, such as Ms. Stevens. In fact, Ortho-Tain *had* supported its position with citation to case law, from Colorado, holding that the privilege *did* extend to parties and witnesses. This Court acknowledged as

much in reversing the District Court on that point of law. Unfortunately, the same false premise is advanced: that Ortho-Tain's failed to defend or support its Rule 12 Motion with citation to case law. That proposition is false and the dismissal order should be reversed.

## IX.     Vivos Bears The Burden of Compliance with Rule 15(d)

The *Response*, at page 39, states that *"…Ortho-Tain still has not provided any compelling reasons why leave to replead should not have been granted.*" First, it was not Ortho-Tain's burden to offer any compelling reasons why leave to replead should not have been granted. Vivos never sought leave to replead. Second, Vivos never sought leave to file a supplemental pleading either.

Ortho-Tain's quarrel is not that Vivos replead its defamation counts, since leave to file an 'amended' complaint had been granted by the District Court. Ortho-Tain's quarrel is that in 'amending' its pleading to cure the defects with its prior defamation claims, Vivos asserted new two claims, based upon post-filing conduct, with new theories of recovery, without first filing a motion and giving Ortho-Tain notice - and without first affording the Court the opportunity to set 'just terms' for such a supplemental pleading. Had Vivos sought leave under Rule 15(d) then Vivos - not Ortho-Tain - would have had the burden of demonstrating that leave should be granted.

The issue presented is whether Rule 15(d) requires a party to file a motion with the Court and provide reasonable notice to the opposing party before leave may be granted for the filing of a Supplemental Pleading. Vivos does not deny that it did not file a motion and seek leave to file a supplemental pleading. Vivos' position is it did not *need* to request leave of court under Rule 15(d) because the District Court had concluded that it was free

to interpret its prior order as not merely granting leave to amend under Rule 15(a), to cure the cited defects, but also leave under Rule 15(d) to assert new causes of action.

Vivos offers circular reasoning to avoid the plain text of the Rule. A cardinal rule of statutory construction requires that a statute (or Rule) is to be construed so that every clause and word is given effect, if possible. If both a filed motion and reasonable notice to the opponent (and 'just terms') were *not* necessary predicates to a party's filing of a supplemental pleading then Rule 15(d) would not begin with the condition "*On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading….*" There was no 'motion'. There was no 'reasonable notice'. There were no 'just terms' set for Vivos' filing of a supplemental pleading. Vivos simply filed its supplemental pleading and claims it to be kosher because the District Court's original order was 'silent' on whether leave to amend had been granted under Rule 15(a) or Rule 15(d).

This Court should give effect to the text of Rule 15(d), hold compliance with it is neither aspirational to litigants nor subject to disregard as an inconvenient technicality by the District Courts. *See, Northern Natural Gas Co. v. L.D. Drilling, Inc.*, 2009 WL 10689006 at *1 (FN2) (D.Kan. 2009) ("*Rule 15(d) expressly requires a motion and reasonable notice before a supplemental complaint is allowed.*")

## X.    Conclusion and Prayer for Relief

WHEREFORE, Ortho-Tain respectfully prays that this Court enter an Order reversing the District Court and ordering it to dismiss, with prejudice, all counts of Vivos' *First Amended Complaint* and for such other and further relief as the Court deems appropriate and just.

Respectfully submitted,
Neff Law Group PC
/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, Illinois 60654
(312) 667-4484
nathan@nefflawgroup.com

## Certificate of Compliance with Type-Volume Limit

1.  This document complies with the type-volume limit of Fed.R.App.P.27.3(B)(3) because, excluding parts of the document exempted by Fed.R.App.P.32(f), if any, this document contains 4954 words or 391 lines of text.

2.  This document complies with the typeface requirements of Fed.R.App.32(a)(5) and the type-style requirements of Fed.R.App.32(a)(6) because this document has been prepared in a proportionally spaced typeface (Windows) in 13-point font, *Times New Roman*.

Respectfully submitted,
/s/ Nathan I. Neff
Attorney for Appellant, Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com

## **CERTIFICATE OF SERVICE**

I, Nathan I. Neff, attorney for appellant, Ortho-Tain, Inc., certify that on June 20, 2024 I caused a true and correct copy of the foregoing *Reply Brief of Appellant*, to be served and transmitted to all counsel of record using the CM/ECF system and/or via e-mail upon the following attorneys of record:

Brenna G. Fisher
Kevin Walton
1200 17th Street, Suite 1900
Denver, Colorado 80202
(303) 634-2000
*Attorneys for Appellee, Vivos Therapeutics, Inc.*

/s/ Nathan I. Neff
Attorney for Ortho-Tain, Inc.

Nathan I. Neff
Neff Law Group PC
414 N. Orleans, Suite 210
Chicago, IL 60654
(312) 667-4484
nathan@nefflawgroup.com